ESSGEE COMPANY OF CHINA ET AL. *v.* UNITED STATES.

HANCLAIRE TRADING CORPORATION ET AL. *v.* UNITED STATES.

ERROR TO AND APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 706 and 707. Submitted April 25, 1923.—Decided May 7, 1923.

1. Review of orders of the District Court in special proceedings in which no jury can intervene is by appeal, and not by writ of error. P. 152.
2. In view of provisions of the Act of September 6, 1916, rendering mistakes in proceeding by writ of error instead of appeal, or *vice versa,* immaterial from the standpoint of jurisdiction, the practice of adopting both methods through abundant caution is discouraged. *Id.*
3. A corporation is not protected by the Fourth and Fifth Amendments from producing its books and records before a federal grand jury engaged in investigating its conduct in relation to the federal criminal laws. P. 155.

4. The lawful effect of a subpœna *duces tecum* addressed to a corporation is not disturbed by failure to put its officers who produce the papers on the stand. P. 157.

5. A claim of irregularity in not calling such officers before the grand jury, *held,* to have been waived by their conduct. *Id.*

6. An officer of a corporation having custody of its books and papers can not object to producing · them upon the ground that they may disclose his own guilt. P. 158.

Affirmed.

REVIEW of orders of the District Court denying petitions for the return of books and papers produced under a subpœna *duces tecum.*

*Mr. W. M. K. Olcott* and *Mr. A. A. Silberberg* for plaintiffs in error and appellants.

*Mr. Solicitor General Beck, Mr. Assistant Attorney General Crim, Mr. Clifford H. Byrnes,* Special Assistant to the Attorney General, and *Mr. Francis A. McGurk* for the United States.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

These are appeals and writs of error to review the action of the District Court in. denying petitions of the two companies, the Essgee Company of China and the Hanclaire Trading Corporation, praying that the books and papers produced by an officer of the two companies, in response to a *duces tecum* issued to them by order of the Federal Grand Jury, be returned to the petitioners, on the ground that the process issued and the detention of the books by the Government were and are in violation of their rights under the Fourth and Fifth Amendments to the Federal Constitution.

Both appeals and writs of error were allowed in these cases. This was unnecessary. The review sought is of an order of the District Court in a special proceeding in

which no jury can intervene.  It likens itself in its appellate character to a review of cases in equity or in admiralty or of an order upon a writ of *habeas corpus* in which issues of facts are triable to the court, and in which the review may properly involve a reëxamination by the reviewing court of the whole record and of the findings of the court upon both the law and the evidence therein. Since the passage of the Act of September 6, 1916, entitled "An Act To amend the Judicial Code " (39 Stat. 726, c. 448, § 4), which provides that no court having power to review a judgment or decree passed by another shall dismiss a writ of error solely because an appeal should have been taken, or dismiss an appeal because a writ should have been sued out, but that when such mistake or error occurs, it shall disregard the same and take the action which would be appropriate if the proper appellate procedure had been followed, the distinction is not important from the standpoint of the jurisdiction of this Court.  In the interest, however, of orderly procedure, economy in time of both courts, and in the making up and printing of the record, counsel should make every effort to select the proper procedure in review and not duplicate methods out of an abundant caution which the Act of 1916 makes unnecessary.

The Hanclaire Trading Corporation and the Essgee Company of China were organized under the laws of New York and were doing an importing business in New York City.   Schratter was an officer in both companies and Kramer was an officer of one and attorney for both.  The Federal Grand Jury in the Southern District of New York was investigating charges of frauds in importations by these two companies whose interests and transactions were intermingled.   On October 14, 1921, a subpœna *duces tecum* was served upon each of the corporations by personal service upon Schratter as a chief officer thereof. Schratter then directed Kramer to gather together the

books and papers called for and produce them at the Federal Court House. The subpœna was served by the U. S. Marshal for the District. He was accompanied by three other Government officials, who, it was charged, without authority examined and took away to the Court House other books and papers not included in the list set forth in the *duces tecum*. This incident was made an issue in the affidavits; but it is evident from reading the record and the admission of counsel that we are not concerned with any such records and papers, but only with those which were produced by Kramer for the two companies in response to the *duces tecum*. Schratter in his affidavit and petition claims that under the subpœna some papers belonging to him individually were taken, but an examination of the list of records and papers produced, shows that the only personal paper produced by Kramer was the personal tax return of Schratter, which he does not assert was in any way relevant to the charges, or in any degree incriminating as to him. Kramer and Schratter brought the records and papers called for by the subpœna to a room in the Court House and deposited them on a table where the District Attorney found them and took charge of them. Neither Schratter nor Kramer was then called before the Grand Jury, but they were both at once arrested upon warrants for violation of the importing laws. They testified that they did not see the District Attorney when he took the records and papers and that Kramer demanded a return of them and protested against their detention. Evidence to the contrary is offered by the Government witnesses, but we do not regard the issue as material.

The next day, October 15, 1921, Schratter appeared before Judge Knox and applied for permission to go abroad in order to attend to business of vital personal importance. Schratter remained abroad until June, 1922, and on the 9th of that month appeared to plead to an indictment

which had in the meantime been found against the two corporations and himself.  Meantime, Kramer, after much solicitation on his part, was given an opportunity to testify to the Grand Jury and to present to them other records and papers which he voluntarily produced.  He was not indicted.  After Schratter's return and Kramer's escape from indictment, the two corporations and Schratter filed the petition, denial of which by the District Court is now before us for review.

The books and papers brought before the Grand Jury and the court in this case were the books, records and papers of corporations of the State of New York.  Such corporations do not enjoy the same immunity that individuals have, under the Fourth and Fifth Amendments, from being compelled by due and lawful process to produce them for examination by the state or Federal Government.  Referring to the books and papers of a corporation, Mr. Justice Hughes speaking for this Court in *Wilson* v. *United States,* 221 U. S. 361, 382, said:

" They have reference to business transacted for the benefit of the group of individuals whose association has the advantage of corporate organization.  But the corporate form of business activity, with its charter privileges, raises a distinction when the authority of government demands the examination of books.  That demand, expressed in lawful process, confining its requirements within the limits which reason imposes in the circumstances of the case, the corporation has no privilege to refuse.  It cannot resist production upon the ground of self-incrimination.  Although the object of the inquiry may be to detect the abuses it has committed, to discover its violations of law and to inflict punishment by forfeiture of franchises or otherwise; it must submit its books and papers to duly constituted authority when demand is suitably made.  This is involved in the reservation of the visitatorial power of the State, and in the

authority of the National Government where the corporate activities are in the domain subject to the powers of Congress." *Hale* v. *Henkel,* 201 U. S. 43, and *Wheeler* v. *United States,* 226 U. S. 478, are to the same point.

Counsel for appellants rely upon *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, but it has no application to the case before us. The *Silverthorne Case* was a writ of error to reverse a judgment for contempt against a corporation for refusal to obey an order of the court to produce books and documents of the company to be used to show violation of law by the officers of the company. This Court found that without a shadow of authority and under color of an invalid writ, the marshal and other government officers had made a clean sweep of all the books, papers and documents in the office of the company while its officers were under arrest. These documents were copied and photographed and then the court ordered their return to the company. A subpœna was then issued to compel the production of the originals. The company refused to obey the subpœna. The court made an order requiring obedience and refusal to obey the order was the contempt alleged. This Court held that the Government could not, while in form repudiating the illegal seizure, maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had. In other words, we held that the search thus made was an unreasonable one against which the corporation was protected by the Fourth Amendment and which vitiated all the subsequent proceedings to compel production. There was nothing inconsistent with the *Wilson Case* in this ruling for, as we have seen in the passage quoted from the opinion in that case, a corporation can only be compelled to produce its records against itself by the demand of the Government expressed in lawful process, confining its requirements within limits which reason imposes in the circumstances of the case. It is to submit its books and

papers only to " duly constituted authority when demand is suitably made." In the case before us the demand was suitably made by duly constituted authority. In the *Silverthorne Case,* it was not. Here it was expressed in lawful process, confining its requirements to certain described documents and papers easily distinguished and clearly described. Their relevancy to the subject of investigation was not denied. As said in the *Wilson Case* (p. 376): " But there is no unreasonable search and seizure, when a writ, suitably specific and properly limited in its scope, calls for the production of documents which, as against their lawful owner to whom the writ is directed, the party procuring its issuance is entitled to have produced."

Objection is made that neither Kramer nor Schratter was called before the Grand Jury when they produced the books and papers in response to the *duces tecum.* That was not necessary. The subpœna only summoned the corporations to appear and produce the named documents and papers. There was no real *ad testificandum* clause in the subpœna because a corporation could not testify. It was expressly ruled in the *Wilson Case,* that the failure to put officers of the corporation on the stand in such a case did not in any way invalidate or destroy the lawful effect of the *duces tecum.*

Kramer says that he protested against the retention of the documents he had produced at the time because he was not called before the Grand Jury. At his own solicitation he was thereafter called before that body and testified and voluntarily produced other documents and papers, and never renewed his demand for the documents produced under subpœna until after the Grand Jury ignored the charge against him some eight months later. Schratter against the opposition of the District Attorney but with the consent of the court absented himself from the country for eight months and took no steps in respect to the produced documents and papers. Judge Knox

held that such conduct constituted a waiver of any irregularities in not calling these witnesses before the Grand Jury when the documents and papers were produced. If a waiver were needed, as we do not think it was under the *Wilson Case,* this clearly would have been sufficient.

Schratter joined with each corporation in asking a return of the documents and papers of that corporation on the ground that they might incriminate him. But the cases of *Hale* v. *Henkel,* 201 U. S. 43; *Wilson* v. *United States,* 221 U. S. 361, and *Wheeler* v. *United States,* 226 U. S. 478, show clearly that an officer of a corporation in whose custody are its books and papers is given no right to object to the production of the corporate records because they may disclose his guilt. He does not hold them in his private capacity and is not, therefore, protected against their production or against a writ requiring him as agent of the corporation to produce them.

Appellants cite the cases of *Boyd* v. *United States;* 116 U. S. 616; *Weeks* v. *United States,* 232 U. S. 383, and *Gouled* v. *United States,* 255 U. S. 298, to support their contention that the proceedings complained of herein violate their rights under the Fourth and Fifth Amendments. Those cases were all unreasonable searches of documents and records belonging to individuals. The distinction between the cases before us and those cases lies in the more limited application of the Amendments to the compulsory production of corporate documents and papers as shown in the *Henkel, Wilson* and *Wheeler Cases.*

*The order of the District Court is affirmed.*