## In re BLEECKER et al.

(District Court, S. D. New York. November 17, 1925.)

1. **Bankruptcy** ⬤≈238.

President and treasurer of corporation *held* guilty of contempt of bankruptcy court by withholding records after subpoena to produce them.

2. **Bankruptcy** ⬤≈242(2)—President of corporate bankrupt was justified in refusing to answer questions as to book entries but not in withholding physical possession of books after service of subpoena therefor on treasurer.

President of corporate bankrupt was justified in refusing to answer questions relative to book entries on ground that answers might incriminate him, but he was without right to withhold physical possession of books after treasurer had been served with subpoena for their production.

In Bankruptcy. In the matter of Morris Bleecker and others, individually and as copartners trading as the B. G. B. Dress Company, bankrupt. Motion to punish Mertz Berkowitz and another for contempt. Judgment of contempt.

Order affirmed in 14 F.(2d) 1019.

Samuel Rose, of New York City, for Berkowitz and Shinkman.

Bondy & Schloss, of New York City, for trustee.

THACHER, District Judge. Motion to punish Mertz Berkowitz and Samuel Shinkman for contempt upon certificate of referee in bankruptcy recommending such punishment.

During hearings before the referee in bankruptcy herein, it became important to examine the books of Berk's Auto Trucking Company, a New York Corporation, having its principal place of business in the city of New York. One Mertz Berkowitz, a brother of one of the bankrupts and president of the Berk's Auto Trucking Company, appeared before the referee on September 17, 1925, pursuant to a subpoena served upon him requiring him to produce the books of the Berk's Auto Trucking Company. He refused to produce the books, and, when directed to do so, later appeared with the books and declined to answer any questions on the ground that his answers might incriminate him. Thereafter, on September 30, 1925, Samuel Shinkman appeared as a witness and testified that he was the treasurer of the Berk's Auto Trucking Company. He was thereupon served with a subpoena to produce the books of the company, and the hearing was adjourned until October 6, 1911, at which time he appeared again and testified that, after being served with the subpoena, he suggested to Mertz Berkowitz that he resign as treasurer, and thereafter received notice of a meeting of the directors held on October 5, at which time he resigned his office in the corporation; that he had not produced the books because Mertz Berkowitz had told him that he was no longer an officer of the corporation and was not authorized to do so.

In opposition to this motion, Mertz Berkowitz submits an affidavit in which he states:

"I have asserted before the referee and assert now that I may be incriminated if I am compelled to testify as to the contents of the books of the Berk's Auto Trucking Company, so far as they relate to any transactions between Berk's Auto Trucking Company, the bankrupts, and myself. I make such assertion and claim such privilege in good faith. It is solely because of this claim that I have, within the last two months, kept in my personal possession, in a separate part of the office of the Berk's Auto Trucking Company, the books of said corporation and have declined to permit any other officer of the Berk's Auto Trucking Company to have access to said books, except under my immediate personal supervision, or to remove or have the custody of any of said books. Mr. Shinkman, who was treasurer of the corporation, has not at any time within the last two months had access to or possession of, or custody of any of said books. I admit that he was served with a subpoena and informed me that he desired to obtain from me the books of the company for production before the referee, but I declined to permit him to have such possession or to give such books to him. I informed Mr. Shinkman that I had claimed the privilege aforesaid, and for that reason alone, and until the court passed upon my claim of privilege, would refuse to have the books out of my possession. * * * It is true that on the morning of October 6th Shinkman asked me to let him have the books to produce before the referee, and that I declined to let him have the books. I told him at that time that he was no longer an officer of the company but that I had no objections to his appearing before the referee, nevertheless, but that, even if he were still an officer, I would not let him have the books, because I felt that I had a legal right to retain them upon my pleas of privilege."

Shinkman, in an affidavit submitted in his behalf in opposition to this motion, attempts to justify his conduct by the claim that he did not at any time after the first hearing on September 30th, have "immediate custody" of any of the books of the Berk's

Auto Trucking Company, and did not have personal control of any character 'over said books, which were, during such time, in the possession of Mertz Berkowitz, who declined to turn them over to him "because, as he stated to me, he had pleaded before the ref- eree that the books if opened for inspection, might tend to incriminate him (Mertz Berk- owitz), and that therefore he would not turn them over or any of them until the court had ruled as to the propriety of his claim of priv- ilege."

[1, 2] The referee has found that the remov- al of Samuel Shinkman from his office as treasurer of the corporation was not effected in good faith, but was a device resorted to by the witness Mertz Berkowitz and the wit- ness Samuel Shinkman to defeat the process of this court. If upon the testimony before the referee there could be the slightest doubt as to the correctness of this conclusion, it is entirely removed by the affidavits of Berko- witz and Shinkman submitted in opposition to this motion. The obvious purpose of the resignation was to enable Shinkman to ap- pear before the referee and assert that he was no longer an officer of the corporation and therefore could not produce the books. It may be that, because of the entirely un- warranted action of Mertz Berkowitz in with- holding the records of the corporation under an assertion of personal privilege, Shink- man would not have been able to produce the books, even if he had not resigned. But the plain purpose of the resignation was to con- ceal from the referee that Berkowitz was con- tumaciously refusing to permit an officer of the corporation who had been subpœnaed to produce the books and records called for by valid subpœna. Although Berkowitz was justified in refusing to answer questions with regard to the entries in the books on the ground that such answers might tend to in- criminate him, his conduct in withholding the physical possession of the books after the treasurer of the corporation had been served with a subpœna for their production is ut- terly indefensible. Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652; Wilson v. U. S., 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558; Wheeler v. U. S., 226 U. S. 478, 33 S. Ct. 158, 57 L. Ed. 309; Essgee Co. v. U. S., 262 U. S. 151, 43 S. Ct. 514, 67 L. Ed. 917. He has persisted in this conduct until the present time, and the resignation of Shinkman was obviously a device by Shinkman and Berkowitz in aid of a deliberate purpose to obstruct the process of this court by withholding from the referee books and records of the corporation.

Fines in punishment for contempt will be imposed in the sum of $250 upon Samuel Shinkman, and in the sum of $500 upon Mertz Berkowitz. Both Shinkman and Berk- owitz will be committed to the custody of the marshal until their fines are paid and until they shall cease to obstruct and impede the process of this court, or otherwise purge themselves of their contempt.