## SECURITIES AND EXCHANGE COMMISSION v. McGARRY et al.

### No. 14800.

District Court, D. Colorado.

July 27, 1944.

Edward H. Cashion, of Philadelphia, Pa., John L. Geraghty and Alec J. Keller, both of Denver, Colo., and Ellwood L. Englander, of Philadelphia, Pa., for plaintiff.

Charles T. Mahoney and William H. Scofield, both of Denver, Colo., for W. E. McGarry and Industrial Loan Corporation, respondents.

John R. Wolff, of Boulder, Colo., for Commonwealth Industrial Bank.

SYMES, District Judge.

The Securities and Exchange Commission on April 27, 1944, during the progress of an investigation pursuant to its powers under § 20(a) of the Securities Act of 1933, 15 U.S.C.A. § 77t(a), and the power conferred upon it by § 19(b) of the said Act, 15 U.S.C.A. § 77s(b), entered an order which set forth (par. 2 thereof), that information received tended to show that respondents W. E. McGarry and Industrial Loan Corporation from May, 1941, to June, 1943, sold and delivered to members of the investing public certain securities issued by the respondent corporations; that in the sale of these securities certain false and misleading statements had been made, and that the mails and means and instruments of transportation or communication in interstate commerce had been used; and such acts if true tended to show that W. E. McGarry and Industrial Loan Corporation violated §§ 5(a) and 17(a) of the Securities Act of 1933, 15 U.S.C.A. §§ 77e(a) and 77q(a). The order further designated and empowered certain of its officers and employees named therein to subpoena witnesses, compel their attendance, take evidence and require the pro-

duction of any books, papers, correspondence or other records deemed relevant or material to the inquiry, and to perform all duties in connection therewith as authorized by law.

In accordance therewith subpoenas duces tecum were issued and served, directing the respondents to produce certain designated books and records. This the respondents failed to do and advised the Commission that it would not do so unless required by court order. Thereafter this court issued an order directing respondents to show cause why they should not comply with said subpoenas, to which respondents filed response. The respondent McGarry now states he will comply with any lawful order of the court. The Industrial Loan Corporation raises the sole objection that a corporation cannot be subpoenaed as a witness. The Commonwealth Industrial Bank makes the same objection, and in addition that:

"said application states insufficient facts to authorize applicant to conduct an inquisition into the books and affairs and records of said respondent corporation and that * * * said subpoena * * * is unauthorized by the Securities Act of 1933 * * * and beyond the power and jurisdiction of said applicant".

█ The record discloses that the two corporations are required only to produce certain records and documents. The respondents argue this cannot be done. This question can be quickly disposed of. Essgee Company v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917, holds a corporation is not protected by the Fourth and Fifth Amendments from producing its books and records before a Federal grand jury engaged in investigating its conduct in relation to Federal criminal laws, the Court citing Wilson v. United States, 221 U.S. 361, at page 382, 31 S.Ct. 538, at page 545, 55 L.Ed. 771, Ann.Cas.1912D, 558, in which case the Supreme Court points out that books and papers of a corporation which has not been created as a mere instrumentality of government, but by voluntary agreement by and for the benefit of a group of individuals taking advantage of the corporate form of organization permitted, that when the Government demands the examination of its books —"That demand, expressed in lawful process, confining its requirements within the limits which reason imposes in the circumstances of the case, the corporation has no privilege to refuse. It cannot resist production upon the ground of self-crimination. Although the object of the inquiry may be to detect the abuses it has committed, to discover its violations of law, and to inflict punishment * * * it must submit its books and papers to duly constituted authority when demand is suitably made."

Further, the Essgee case, supra, 262 U.S. at page 155, 43 S.Ct. at page 516, 67 L.Ed. 917, says:

" 'This is involved in the reservation of the visitorial power of the state, and in the authority of the national government where the corporate activities are in the domain subject to the powers of Congress.' "

Citing Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652—the leading case cited by the respondents.

Turning to the Henkel case, supra, 201 U.S. at page 75, 26 S.Ct. at page 379, 50 L.Ed. 652, we find this statement:

"It would be a strange anomaly to hold that a state, having chartered a corporation to make use of certain franchises, could not, in the exercise of its sovereignty, inquire how these franchises had been employed, and whether they had been abused, and demand the production of the corporate books and papers for that purpose."

Further at page 75 of 201 U.S., at page 379 of 26 S.Ct., 50 .L.Ed. 652, the Court says the corporation having been chartered under the law of New Jersey, such a franchise " * * * must also be exercised in subordination to the power of Congress to regulate such commerce [interstate], and in respect to this the general government may also assert a sovereign authority to ascertain whether such franchises have been exercised in a lawful manner, with a due regard to its own laws." The Court then points out (201 U.S. at page 75, 26 S.Ct. at page 379, 50 L.Ed. 652), that the corporation being subject to a duel sovereignty, the Federal Government possesses the same right to see that its own laws are respected as the state would have with respect to the special franchises vested in it by the laws of the state, saying:

"The powers of the general government in this particular in the vindication

of its own laws are the same as if the corporation had been created by an act of Congress."

On the general question involved Endicott Johnson Corp. v. Perkins, 317 U. S. 501, 63 S.Ct. 339, 87 L.Ed. 424, is decisive, the Court there holding that the subpoena power delegated by the Walsh-Healey Public Contracts Act is clearly within the limits of congressional authority. The subpoena power there discussed is similar to that found in the Act in question here and that granted by Congress to and exercised by many administrative tribunals.

It appears in the Commission's application that it ordered this investigation to determine whether the Industrial Loan Corporation and W. E. McGarry had violated certain provisions of the Securities Act of 1933 set out in the Commission's order. It further appears that the Commission's staff have information which tends to show that McGarry and the Industrial Loan Corporation sold securities including "$20 par value stock of Commonwealth Industrial Bank" to members of the public.

The Commission's order further discloses that in the sale of said stock the said parties made certain misrepresentations as to the value of the Commonwealth Industrial Bank stock.

By analogy with the Endicott Johnson case, supra, the matter which the Commission here is investigating is an alleged violation of the Securities Act, which it cannot do without the exercise of the power of subpoena granted by the Act, as Mr. Justice Jackson there points out. He says that in such a situation the district court is called upon merely to aid the Commission in the performance of its duty. The court has no justiciable matter before it and no issue to decide. It is merely required to perform a duty imposed upon it by the Act and cannot disable the Commission from rendering the complete decision on the alleged violation that Congress has directed it to do. The making of any findings was the problem of the Commission and not the district court.

In other words, we cannot anticipate or decide issues over which the Commission has exclusive jurisdiction.

As Justice Murphy says in Endicott Johnson Corp. v. Perkins, supra, 317 U.S. at page 510, 63 S.Ct. at page 344, 87 L.Ed. 424, in his dissenting opinion, the activities of the administrative agencies in exercising their important responsibilities of a quasi-judicial nature "should not be subjected to unwarranted and ill-advised intrusions by the judicial branch of the government." See also Penfield Company of California v. Securities and Exchange Commission, 9 Cir., 143 F.2d 746, 751, where the court, among other things, said this on the interstate feature of the case:

" 'An adjudication that congress could not establish an administrative body with authority to investigate the subject of interstate commerce and with power to call witnesses before it, and to require the production of books, documents, and papers relating to that subject, would go far toward defeating the object for which the people of the United States placed commerce among the states under national control. All must recognize the fact that the full information necessary as a basis of intelligent legislation by congress from time to time upon the subject of interstate commerce cannot be obtained, nor can the rules established for the regulation of such commerce be efficiently enforced, otherwise than through the instrumentality of an administrative body, representing the whole country, always watchful of the general interests, and charged with the duty, not only of obtaining the required information, but of compelling, by all lawful methods, obedience to such rules.' "

See also Bowles v. Baer, 7 Cir., 142 F. 2d 787, where the court points out that the district court was given no power by the statute to regulate the manner in which these investigations are to be conducted, but that the Administrator in a proper case is authorized to apply to the district court to compel compliance with his subpoena.

I have just read the reply brief on behalf of respondent filed this day. The whole argument there is centered upon a quotation from the dissenting opinion of Justice Brewer in the Hale v. Henkel case, supra, that a corporation being incorporated by the state has some sort of immunity from regulation, investigation or prosecution by the Federal Government. Of course such is not the holding in the Henkel case, or of any other authority. True corporations are mostly incorporated under the laws of various states, but the

Federal Government, as pointed out, has the power to and does regulate them in numerous ways.

A very recent case in the Supreme Court, United States, Petitioner, v. White, 64 S.Ct. 1248, answers the respondents' arguments. There a Federal grand jury investigation was being conducted in one of the Federal courts in Pennsylvania, in the course of which it issued a subpoena directing a local labor union to produce before the grand jury copies of its constitution and by-laws and specifically enumerated union records showing its collection of work-permit fees, including amounts paid therefor and the identity of the payors over a certain period of time. The respondent, who described himself as assistant supervisor of the union, appeared before the grand jury with the records called for in his possession, but refused to produce them on the ground they might tend to incriminate the union and himself as an officer thereof, or individually. He was cited for contempt and ordered punished by the district court. The Court of Appeals, 3 Cir., 137 F.2d 24, however, reversed the district court, holding that the records of an unincorporated labor union were the property of all its members, and if respondent was a union member and the books and records would tend to incriminate him, he could refuse to produce them before the grand jury.

The Supreme Court granted certiorari and reversed the Circuit Court of Appeals. The Court first stated [64 S.Ct. 1251]:

"Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation." Citing Hale v. Henkel, supra, Wilson v. United States, supra, and Essgee Co. v. United States, supra.

The Court then observes:

"The scope and nature of the economic activities of incorporated and unincorporated organizations and their representatives demand that the constitutional power of the federal and state governments to regulate those activities be correspondingly effective. The greater portion of evidence of wrongdoing by an organization or its representatives is usually to be found in the official records and documents of that organization. Were the cloak of the privilege to be thrown around these impersonal records and documents, effective enforcement of many federal and state laws would be impossible." Citing Hale v. Henkel, supra, and 8 Wigmore on Evidence, 3rd Ed., § 2259a. And continuing:

"The framers of the constitutional guarantee against compulsory self-disclosure, were interested primarily in protecting individual civil liberties, cannot be said to have intended the privilege to be available to protect economic or other interests of such organizations so as to nullify appropriate governmental regulations.

"The fact that the state charters corporations and has visitorial powers over them provides a convenient vehicle for justification of governmental investigation of corporate books and records."

Again citing Hale v. Henkel and Wilson v. United States, supra, the Court further said:

"Basically, the power to compel the production of the records of any organization, whether it be incorporated or not, arises out of the inherent and necessary power of the federal and state governments to enforce their laws, with the privilege against self-incrimination being limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records."

And finally:

"The exclusion of the union from the benefits of the purely personal privilege does not depend upon the nature of the particular investigation or proceeding. The union does not acquire the privilege by reason of the fact that it is not charged with a crime or that it may not be subject to liability under the statute in question."

This case interprets Hale v. Henkel, supra, contrary to the contentions of the respondents.

We are forced to the conclusion that the Commission is entitled to the relief prayed for, and it may submit a form of order.