James P. MITCHELL, Secretary of Labor, U. S. Department of Labor, Defendant and Petitioner,

v.

TRUCK DRIVERS LOCAL UNION NO. 299, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, an unincorporated association,

and

General Drivers, Warehousemen, Helpers and Gas Station Attendants Local Union No. 614, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, an unincorporated association, Plaintiffs and Respondents.

Civ. 20628.

United States District Court
E. D. Michigan, S. D.

Feb. 14, 1961.

George E. Woods, Jr., U. S. Atty., Detroit, Mich., and Aaron A. Caghan, Regional Atty., Dept. of Labor, Cleveland, Ohio, for petitioner.

George S. Fitzgerald, Detroit, Mich., Hugh Hafer, Milwaukee, Wis., Paul B. Mayrand, Detroit, Mich., for respondents.

KAESS, District Judge.

Proceedings on the issues here involved were first initiated in this court with the filing by Local Unions 299 and 614 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, of a complaint and request for temporary restraining order, to enjoin the Secretary of Labor and his duly delegated subordinates from enforcing compliance of certain subpoenas duces tecum allegedly issued pursuant to the Labor-Management Reporting and Disclosure Act. That cause was dismissed by stipulation of the parties because service was not and could not effectively be made on the Secretary of Labor from this jurisdiction.

The instant case was thereupon instituted by the Secretary of Labor, and this court then signed an order directing the respondents to show cause why subpoenas duces tecum issued by the United States Department of Labor on September 19, 1960 should not be enforced.

In the hearings before this court, together with arguments of respective counsel and through the briefs, pleadings and exhibits, the Secretary of Labor has never indicated that there was any complaint or charge either filed with or pending before him involving the respondents. Nor does the Secretary of

Labor, or his duly authorized and delegated subordinates, indicate or intimate that there has been, could be, or do they have any reason to believe any violation of law has been committed or contemplated by the respondent unions.

Thus, in point of fact, this case can only be considered from the viewpoint that there is no reason for the issuance of the subpoenas duces tecum, aside from the mere desire of the Secretary of Labor to examine the books and records of the respondents under the claimed broad inquisitorial powers granted him by the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq., commonly called the Landrum-Griffin Bill.

More specifically the subpoenas duces tecum (addressed to each local) states that:

"At the instance of the Commissioner, Bureau of Labor-Management Reports, Department of Labor, you (the officer of the local) are hereby required to appear before (an officer of the Bureau named, together with the date, time and place) to testify In The Matter of *an investigation by the Bureau of Labor-Management Reports involving a determination whether any person has violated or is about to violate any provision of the Labor-Management Reporting and Disclosure Act of 1959*, 29 U.S.C. 401 et seq., except Title I or amendments made by the Act to other Statutes."

The above portion of the subpoena duces tecum embodies certain portions of Section 601 of the Act (Section 521 (a) U.S.C.A. Title 29) while the remaining portions of the subpoena duces tecum read as follows:

"And you are hereby required to bring with you and produce at said time and place the following books, papers, and documents:

"All records for the period from January 1, 1959 to the present date maintained by you or under your control which contain any basic information or data on matters required to be reported from which the organizational report (Form LM–1), and the financial report (Form LM–2) filed with the Secretary of Labor for Local 614, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America may be verified, explained or clarified and checked for accuracy and completeness, in connection with all items referred to or listed in such report and all items omitted or excluded therefrom which are relevant thereto and are required to be included in said reports, such records to include but not be limited to, vouchers, worksheets, ledgers, audit reports, records of receipt of dues, fees, assessments, fines and work permits, accounts receivable, accounts payable, journals, journal vouchers, check register, payroll register and related records, and all books of accounts of Local 614, related to the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, or other local unions affiliated with said International, including all bank statements, cancelled checks, check stubs, audit reports, financial reports, records of loans, records of mortgages, records of ownership of property real and personal, deeds, records of trusts, records of investments, and all correspondence and memoranda pertaining to receipts and disbursements."

and embody the significant phrasing of Section 206 of the Act, Section 436 U.S. C.A. Title 29, having to do with retention of records by the unions for a five-year period.

The respondents resist the enforcement of the subpoena upon legal grounds. They urge this court to accept the applicable portions of F.T.C. v. American Tobacco, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, and declare that these subpoenas are unenforceable as being too broad; that the respondents are volun-

tary associations and not corporations and therefore that the law pertaining to the amenability of corporations to administrative subpoenas are not applicable to them; that the interpretation of the Landrum-Griffin Act suggested by the Secretary of Labor is not in accordance with established legal principle or, conversely, that an interpretation which would require respondents to submit the material sought is an unconstitutional interference by Congress in﹒the internal affairs of a union.

The government, depending upon the Landrum-Griffin Act, relies upon interpretation of Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, and the cases cited therein; that the specific reference to the Federal Trade Commission by Congress, in Section 601(b) of this Act, indicates the intent of Congress to grant the inquisitorial powers sought to be enforced here; that Congress has the authority to grant to the Secretary sweeping subpoena power under the Act, and as being used here this subpoena power is within the purview of the Act.

The case of F.T.C. v. American Tobacco, 264 U.S. 298, 44 S.Ct. 336, 337, 68 L.Ed. 696, standing alone clearly indicates the position of the American Judiciary on the "broad shotgun" type of subpoena such as is under consideration here. We cannot cavalierly pass the intendments by Mr. Justice Holmes. The administrative fishing expedition, as well as the judicial, have formerly received condemnation. The following excerpts are in point and bear out the thoughts of this court:

"Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire (Interstate Commerce Commission v. Brimson, 154 U.S. 447, 479, 14 S.Ct. 1125, 38 L.Ed. 1047), and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. * * * It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrevelent, in the hope that something will turn up. * * *

"The right of access given by the statute is to documentary evidence—not to all documents, but to such documents as are evidence. The analogies of the law do not allow the party wanting evidence to call for all documents in order to see if they do not contain it. Some ground must be shown for supposing that the documents called for do contain it. Formerly in equity the ground must be found in admissions in the answer. Wigram, Discovery, 2d ed., § 293. We assume that the rule to be applied here is more liberal but still a ground must be laid and the ground and the demand must be reasonable. Essgee Co. [of China] v. United States, 262 U.S. 151, 156, 157 [43 S.Ct. 514, 67 L.Ed. 917]. A general subpoena in the form of these petitions would be bad. Some evidence of the materiality of the papers demanded must be produced."

The problem next to be faced, however, is whether or not American Tobacco, supra, has been delimited by Oklahoma Press, supra, and therefore controlling in this cause. Obviously Oklahoma Press, in part at least, overshadows the broad language of American Tobacco. An analysis of the principles enunciated in Oklahoma Press is therefore in order. The resistance to the subpoena in the latter case was based on the prohibitions of the Fourth and Fifth Amendments.

The arguments made in the Oklahoma Press concerning the Fifth Amendment to the United States Constitution are not applicable here. No such claim being made by these respondents and, in point of fact, such an argument would not "hold water" in light of the doctrines enunciated there and in United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L. Ed. 1542.

However the language used in Oklahoma Press concerning the "reasonableness" of the breadth of administrative subpoenas is clear. The protections of the Fourth Amendment have never been abandoned.

And it is obvious that Congress intended the judiciary to make an independent investigation concerning the possibility of the "fishing expedition", because as set forth in Oklahoma (327 U.S. at page 209, 66 S.Ct. at page 506) concerning the limitations upon the administrative use of subpoena:

> "Necessarily, as has been said, this cannot be reduced to formula: for *relevancy and adequacy* (emphasis ours) *or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry.*"

Therefore, if the judiciary is to play any role, aside from that of an aide to the administrative or executive, it must make an independent determination of the basis or impelling motive of the investigation. In order to test the breadth of the subpoena there must or should be a standard by which to measure. Therefore, the court should be entitled to know or be advised of the scope of the inquiry. But, by hypothesis, as here, we have again nothing against which to measure, and we are convinced that this is petitioner's intention. Conversely, petitioner urges that there need be no disclosure to permit the Secretary to obtain the records sought. The query then presents itself: how can it be determined whether or not the subpoena can be tested for relevancy, adequacy, or excess in breadth. It is apparently the petitioner's contention that this need not be an essential. How then, without a focal point can the court determine relevancy.

If the words "when he deems it necessary" are to be given any meaning, then there must be some showing beyond the mere action of proceeding by the Secretary of Labor, i. e., the showing of necessity.

Respondents have further made the distinction that the Oklahoma Press case concerns corporations, and therefore is not applicable to labor unions. All cases and periodicals have described unions as voluntary associations and for the most part have dealt with labor unions as such entities. Even in Landrum-Griffin (Section 605) special provision is made for service of process upon unions, obviously enacted because of the unusual characteristics of voluntary associations. True, for some purposes, the union has been treated as a corporate entity. United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542. (However, the Fifth Amendment problems are not present here.) But there are recent cases which sharply point up the inter-relationship of the individual members with a voluntary association. N. A. A. C. P. v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488.

In both of the above cases the United States Court held that the rights of the members of a voluntary association were so bound up with the rights and privileges of the voluntary association that it was declared to be an invasion of the personal rights and privileges of the individuals to require the association to deliver up its membership lists.

In the case at bar the subpoena is sufficiently broad to require the union to deliver up its membership lists (to check on dues paid) and the Secretary may, thereafter, at his discretion, deliver the information to the "interested parties" (part of Section 601(a)). Yet in the debates in Congress involving the Landrum-Griffin Act, the membership lists were declared inviolate. Congress could never have intended that, by indirection, its policies could be overturned, since union dissidents, or persons seeking to destroy unions, through the unlimited discretion of an administrative officer, could obtain and disseminate such lists. Perhaps such an analogy may be extreme, yet again, what safeguards or standards do exist under the petitioner's theory?

This court should not by judicial legislation encourage the extension of the "fishing expedition" into the field of personal rights. Although the Oklahoma case, supra, may appear to have permitted the government to extend the subpoena privilege over that of personal freedom, Mr. Justice Murphy in his dissent to that case did call our attention to the probable consequences.

This court would be loath to extend any further the doctrines enunciated in the Oklahoma Press case. Corporations, perhaps, because they are artificial creatures, have fallen to the onslaught, but we note that the court there took great pains to emphasize and re-emphasize that the application of the principles set forth there should apply only to corporations. The voluntary association does have the elements of individual persons sufficiently so that the Fourth Amendment does give some protection, if we are to give any meaning to that Fourth Amendment. As set forth in Thomas M. Cooley's Constitutional Limitations (8th Ed. 1927), page 617–618:

> "The provisions prohibiting unreasonable searches and seizures 'should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly overzealous executive officers.' (Case footnoted) But they should be so construed as to conserve public as well as individual rights." (Case footnoted)

We cannot close our eyes to the ever closing circle of what we have been pleased to call the right to reasonable privacy.

It was pointed out by the petitioner in his brief that the Teamsters Union is the object of this particular legislation. If so, the Act itself does not so state, nor would it be proper legislation. Thus, this court must take into consideration the portent of the Act in all its significance.

We do not conceive it to be justice to be oblivious to unreasonable subpoena powers and abandon any litigant to the whim and caprice of an administrative officer. The judiciary, in America at least, cannot indulge itself with the luxury of the personal vendetta. The basis of our jurisprudence is "equal justice before the law" and any limitation emasculates the entire concept. All unions, or corporations, or individuals for that matter, are to receive the same treatment. There has been presented here no limitation upon the issuance of the broad subpoenas, nor has there been clearly demonstrated that applicable laws have so cut down the protection of this law, insofar as fishing expeditions are concerned, as to require the respondents to turn over all their records without a murmur. It has been said repeatedly that ours is not a government of men, but of laws.

The subpoenas by themselves are so broad that they constitute a complete seizure unrelated to any recorded purposeful investigation.

Comment should be made upon the requirement of Section 601 permitting the Secretary the right to issue an investigatorial subpoena whenever "he deems it necessary". This language certainly indicates that Congress intended that some showing be made on the question of necessity and it necessarily follows that there must be something upon which to base even an unreasonable declaration of the feeling of necessity by the Secretary.

If the courts cannot impose a limitation of some sort upon the unrestricted use of the subpoena power, the way would be open to unlimited harassment at the whim and caprice of the Executive, or by an administrative officer.

By this we do not mean that the Secretary of Labor cannot investigate, nor that he should cease investigating, or be alert to any violations as they occur or are about to occur, but the manner and means of the investigations should be strictly within legal means and not merely at his sole motion or fancy, or with the power allegedly urged here.

In this instant case the Department of Labor has refused to show, or has been unable to show, any basis for this investigation. This court feels that the requirement of when "he deems it necessary" (Section 601) has its foundation in some reason or purpose, rather than being an excuse for merely looking into the matters of union affairs, relevant or irrelevant, in the hope of something turning up, be it of any nature, without some reasonable foundation or valid purpose.

The interpretations sought by the government here would mean that at the whim of any administerial officer he could decide to exercise the strong arm of his power in an attempt to personally embarrass any union or union officer whom he might personally dislike. Furthermore, what is to prevent repetitious harassment? What are the standards?

This court feels that "necessity" means what it says, and here, where is the necessity? On what basis does the Secretary of Labor here "deem it necessary"?

There are other and further points well worth noting in the case at hand.

Section 201(c) Title II of the Labor-Management Reporting and Disclosure Act requires every labor organization to submit (its) reports to all of its membership, but then requires any member (in the district court, if necessary) to show "just cause" to examine any books, records * * * etc. to verify such a report.

Thus, even a member whose interest in the Union is far greater and closer than that of the government, must show "just cause".

Section 206 of the Labor-Management Reporting and Disclosure Act requires that the union keep its books and records etc. for five years. This court is convinced this section was intended solely as a requirement and mandate that the records (upon which the report to the Secretary was based) be kept intact so that, should they be needed in any proper situation, they would be available. We cannot read into this section the argument that those records are for the Sec-

retary's indiscriminate inspection without a showing of necessity.

Although this point is not specifically urged by the petitioner, the fact that the phrasing in the section is incorporated in part of the subpoenas duces tecum, indicates that such borrowing of the phrasing might have some such implication.

Thus, this court is of the opinion that Section 601 is the only section applicable here.

Respondents have also raised the question of the Secretary subpoenaing books and records beyond the effective date of the Act. Since the above conclusions are dispositive of the basic issues here, it is not necessary to go into that point.

Therefore it is ordered that the petition for the order of compliance should be and hereby is denied.