**In re OCTOBER 1969 GRAND JURY.**
**Karl BRUSSEL, Witness-Appellant,**
v.
**UNITED STATES of America,**
**Appellee.**
**No. 17990.**

United States Court of Appeals,
Seventh Circuit.

Nov. 4, 1970.

Rehearing Denied Jan. 4, 1971.

Gerald M. Werksman, Chicago, Ill., Franklin S. Bonem, Ephraim London, London, Buttenwieser & Chalif, New York City, for appellant.

William J. Bauer, U. S. Atty., William P. Cagney, Asst. U. S. Atty., Chicago, Ill., for appellee; Thomas A. Foran, U. S. Atty., John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., Chicago, Ill., of counsel.

Before CASTLE, Senior Circuit Judge, FAIRCHILD and KERNER, Circuit Judges.

FAIRCHILD, Circuit Judge.

This is an appeal by Karl Brussel from an order in a civil contempt proceeding in aid of a grand jury, committing Brussel to custody until he makes certain responses to the grand jury or until expiration of the particular grand jury.

Brussel had appeared before the grand jury and, on the grounds of possible self-incrimination, declined to answer questions except for his name and place of residence, and declined to produce records of two corporations, Cybertype Corporation and Brussel & Brussel, Inc. He was brought before the district court. Attorney Franklin S. Bonem appeared as his counsel. With respect to Cybertype Corporation, the court directed that Brussel produce its records and answer questions as an officer of Cybertype Corporation, but need not answer as to personal matters. With respect to Brussel & Brussel, Inc., the court directed that he answer whether he was an officer or agent of the corporation, and if so that he produce its records and answer questions pertaining to it, but not personal matters.

Brussel again appeared before the grand jury and declined. He was brought before the court, with counsel, and again refused, in the presence of the court. The court committed him to custody until he complied with the directions or until the expiration of the grand jury.[1]

The matter arose out of two subpoenas duces tecum commanding appearance before the grand jury and production of specified documents.

One subpoena was directed

"TO: Karl Brussel, President, or any authorized agent
"Room 801, Cybertype Corp.
"80 Fifth Avenue, New York, New York 10011"

It required production of several types of records concerning transactions with respect to three books, specified by title, and production of the articles of incorporation minutes, and stock records of Cybertype Corporation.

The other subpoena was directed

"TO: Brussel & Brussel, Inc. or any authorized agent
"80 Fifth Avenue, New York, New York 10011"

It required production of documents described identically as in the first subpoena, except that the corporate records were those of Brussel & Brussel, Inc.

The subpoenas called for appearance on September 30, 1969. Mr. Brussel appeared October 7. It seems not to be disputed that on September 24 there had been a telephone conversation between Attorney Ephraim London, with whom Mr. Bonem is associated, and Assistant United States Attorney Cagney and that the postponement had been agreed upon. Other aspects of the telephone conversation have been the subject of some argument.

The marshal's return of service on each subpoena shows that a copy was handed to Karl Brussel personally. Although the returns do not appear to

---

1. Mr. Justice Marshall, Circuit Justice, ordered that Brussel be released on his own recognizance pending this appeal, noting, in part, that "there appears no evidence in the record of this case that [Brussel] is the custodian of the docu-ments subpoenaed, or indeed that he has any connection with the corporations." Brussel v. United States, Opinion in Chambers, 396 U.S. 1229, 90 S.Ct. 2. 24 L.Ed.2d 53.

have been brought to the attention of the district judge at the hearing, copies of the subpoenas were produced by Mr. Bonem, and there can be little question of the accuracy of the return. We know of no reason why the delivery to Mr. Brussel was not valid service of the subpoena directed to him. Whether such delivery accomplished service on Brussel & Brussel, Inc. depends upon his relationship to that corporation.

No testimony or documentary evidence was offered to show that Brussel was an officer of either Cybertype Corporation or Brussel & Brussel, Inc. Mr. Cagney told the district court that in the conversation concerning adjournment Mr. London had said that Mr. Brussel would appear as an officer of both corporations. Mr. Bonem objected to consideration of Mr. Cagney's statement as evidence.[2]

It is clear that Mr. Brussel's claim of privilege against self-incrimination did not, in itself, justify his refusal to produce the records of either corporation. With respect to the Cybertype records, the subpoena was directed to Brussel personally. The pertinent issue was whether he was an officer or other representative of the corporation of such capacity that he had custody of its records. The other subpoena was directed to a corporation. Brussel & Brussel, Inc. The corporation became obligated to produce its records if the subpoena was served upon it. The first issue was whether Brussel had a relationship to the corporation such that service on it was effected by delivery of a copy to him and the second was whether he was the representative of the corporation for the purpose of compliance with the subpoena or was responsible for its failure to comply.

"It is settled that a corporation is not protected by the constitutional privilege against self-incrimination. A corporate officer may not withhold testimony or documents on the ground that his corporation would be incriminated. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. Nor may the custodian of corporate books or records withhold them on the ground that he personally might be incriminated by their production. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; [Ann.Cas. 1912D 558;] Essgee Co. [of China] v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917." [3]

■ The custodian of subpoenaed corporate documents may be compelled to identify and authenticate them by oral testimony.[4]

■ Brussel's argument on appeal is that there was not enough evidence before the court of his relationship to the corporations nor his capacity to produce the described documents to warrant a finding that he had the duty or the ability to produce them.

"[T]he justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order." [5]

The district court does not appear to have treated as evidence Mr. Cagney's statement that Mr. London had said Brussel would appear as an officer of both corporations. With respect to the Cybertype records, the district court seems to have drawn an inference from the text of the subpoena and Mr. Brussel's appearance pursuant to it that Brus-

---

2. Mr. London acknowledged at oral argument before us that he had written a letter confirming the postponement. The letter referred to the adjournment of "the subpoenas served upon Brussel & Brussel, Inc. and Cybertype, Inc." The phrasing suggests that Mr. London attached no importance at that time to the distinction between the individual and the corporations. The letter, however, was not produced before the district court.

3. Curcio v. United States (1957), 354 U.S. 118, 122, 77 S.Ct. 1145, 1148, 1 L.Ed.2d 1225.

4. Ibid. p. 125, 77 S.Ct. 1145, 1148, 1 L.Ed. 2d 1225.

5. Shillitani v. United States (1966), 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622.

sel was president of the corporation and capable of producing its records. With respect to the Brussel & Brussel, Inc. records, the court evidently concluded that Mr. Brussel could be compelled to state whether or not he was an officer or authorized agent, and conditioned the order to produce the records upon an affirmative answer.

The subpoena relating to Cybertype was directed to Mr. Brussel; it designated him "President"; permitted appearance by an authorized agent; and called for records of the corporation. An inference that Brussel was the president or an authorized agent and that he was the custodian of the records must rest upon the fact that he appeared and upon the proposition that if he were not in fact the president and the custodian of the records he would probably not have appeared without first seeking to be excused. Perhaps the latter may be the more reasonable course of conduct, but we conclude that even if there be some value to the inference, it is not of sufficient strength to be relied on where an individual is to be summarily deprived of his liberty as a means of coercing his action.

As already noted, the district court did not unconditionally order Brussel to produce the records of Brussel & Brussel, Inc., but ordered him to answer whether or not he was an officer or authorized agent. Moreover, there was no proof of valid service upon this corporation unless Brussel occupied such position.

We think that Brussel's claim of privilege against self-incrimination was a legally sufficient justification for his refusal to answer questions concerning his relationship to either corporation. The texts of the subpoenas indicate that the subject of inquiry was the advertising and distribution by the corporations of three books. The titles of two, at least, suggest the possibility of prosecution for transportation of obscene matters [6] or similar offenses. An individual's testimony establishing relationship to the corporations might well furnish a link in the chain of evidence needed to convict the individual of the same offense. The closer the corporation approaches being a one-man entity, the greater the danger. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." [7]

It follows that Brussel could not be compelled to answer the questions as to his relationship to the corporations upon the basis of the present record. As previously noted, if he had produced the records as their custodian, he could have been compelled to give testimony which would identify and authenticate them.

A decision which comes close to supporting the order appealed from is Mc-Phaul v. United States.[8] McPhaul's conviction of willful failure to comply with a congressional subpoena was sustained. He had been subpoenaed to produce records of the Civil Rights Congress. He refused and claimed his privilege. At the trial, the government introduced a letter on the letterhead of the Civil Rights Congress, dated ten days before the committee hearing, and purportedly signed by McPhaul as executive secretary. The Court deemed the letter "evidence of the Subcommittee's reasonable basis for believing that the petitioner could produce the records in question" and held that such evidence coupled with his failure to suggest his inability to produce the records "clearly supported an inference that he could have produced them." [9] In Brussel's case there is no evidence of a basis for belief that he was president of either corporation. More-

6. *E. g.*, 18 U.S.C. §§ 1462, 1465.

7. Hoffman v. United States (1951), 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118.

8. (1960), 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136.

9. *Ibid.* p. 379, 81 S.Ct. p. 143, 5 L.Ed.2d 136.

over, McPhaul had an ample opportunity to present evidence at trial to rebut the inference, while the proceeding against Brussel was summary and, although he requested a continuance, concluded within a very short time after his refusal.

 Counsel for Brussel additionally contend that these proceedings were required to comply with Rule 42(b), F.R. Cr.P., covering prosecution of criminal contempt on notice, since the critical refusal was the one in the presence of the grand jury rather than the refusal in the actual presence of the court. Harris v. United States [10] would so require if the proceeding were in criminal contempt, to impose unconditional imprisonment for punitive purposes. We are of the opinion, however, that a summary proceeding in civil contempt was appropriate to coerce Brussel by imprisonment to perform his obligation to the grand jury if the obligation had been established with certainty.[11]

Although we conclude that the order appealed from must be reversed for insufficiency of proof, we make it plain that further proceedings in civil or criminal contempt are not foreclosed by our decision.

The order is reversed and the cause remanded for further proceedings.

10. (1965), 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240.

11. Shillitani v. United States (1966), 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622.

See December 1968 Grand Jury v. United States (7th Cir., 1970), 420 F.2d 1201; In Re Giancana (7th Cir., 1965), 352 F.2d 921, 922; In Re Parker (10th Cir., 1969), 411 F.2d 1067, 1069.