### DONNELLY v. UNITED STATES.
### Nos. 13278 and 13279.

United States Court of Appeals
Ninth Circuit.

Jan. 29, 1953.

James E. Burns, San Francisco, Cal., for appellant.

Chauncey Tramutolo, U. S. Atty., and Macklin Fleming, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before MATHEWS, HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

Appellant was twice adjudged guilty of criminal contempt and twice sentenced for such offenses committed in the presence of the lower court. Appeals were taken in both cases and consolidated for disposition on this appeal. The Grand Juries here involved had been impaneled before the District Court for the Northern District of California, Southern Division.

Appellant is a public accountant with offices in San Francisco and the documents enumerated in the subpoenas here involved were documents maintained in his practice. The convictions grew out of his refusal to comply with Grand Jury subpoenas duces tecum requiring him to produce (copies of) certain federal income tax returns prepared by him for his clients for the years 1949 and 1950 before two separate Federal Grand Juries.

### The First Contempt

The first subpoena issued December 5, 1951 directed appellant to appear on December 6, 1951 before a then functioning Federal Grand Jury sitting in San Francisco, California within the jurisdiction of the District Court of the United States, Northern District of California, Southern Division

"and bring with you all books, records and memoranda relating to income tax returns for the calendar years 1949 and 1950, prepared and/or filed by you on behalf of any person other than yourself, and copies of all income tax returns for the calendar years 1949 and 1950 prepared and/or filed by you on behalf of any person other than yourself."

Appellant appeared before the Grand Jury, but did not bring the demanded documents. On December 11, 1951 appellee sought an order of the District Court of the above mentioned District and Division directing appellant to produce the records. Proceedings were had on that date in the said District Court during which proceedings appellant specifically refused to claim any privilege against self-incrimination (this because the appellant's own income tax returns were not the subject of investigation or inquiry by the Grand Jury). He advised the court that his grounds for refusing to produce the records before the Grand Jury were based on an accountant's privilege or a moral obligation not to disclose information with respect to his clients; that to do so would not only violate a confidential relationship with clients but would also put him out of business; that the Grand

Jury had no business to subpoena these records for it was merely "fishing" for information.

Appellant testified that he had prepared 25 income tax returns for 1949 but had not checked the number of returns he prepared for 1950. The court ordered him to produce the documents demanded in the Grand Jury subpoena and he refused to do this. On suggestion of Government counsel the court specifically asked appellant if it would be more simple for him to produce *only the names and dates of the tax returns sought* by the jury in which case the court would require him to supply merely this limited information. Appellant refused to supply either the records demanded in the subpoena *or* produce the names and dates of the taxpayers' returns prepared by him. Thereupon, the court entered the Order on Contempt here involved (dated December 12, 1951) which adjudged appellant to be guilty of contempt for disobedience of the order of the court as specified in the certificate.[1]

Appellant moved to set aside the order and judgment of contempt just above referred to. This motion was denied. It was based on the grounds that (1) the subpoena was illegal and void, (2) its issuance was an abuse of the process of the Grand Jury, (3) its issuance was brought about by improper influence exerted upon the Grand Jury brought about by oral and written communications to said Grand Jury and certain Grand Jurors in violation of law, (4) it was not issued by a regular and duly constituted Grand Jury or in course of a lawful and proper inquisition, (5) it was invalidly amended, (6) there was no due or legal process that appellant failed to obey.

Subsequently and on January 24, 1952, the District Judge entered a formal judgment of sentence that appellant pay a fine of $500. From this judgment the first appeal was taken.

### The Second Contempt

On January 25, 1952, appellant was subpoenaed to appear before another and different Grand Jury of the said United States District Court and the subpoena directed and required him to bring with him *the same records called for by the first subpoena of December 5, 1951*. On the same day appellant filed a notice of appeal from the first judgment of contempt.

Three days later appellant moved to quash this second subpoena on four grounds. (1) That it does not designate with sufficient clarity or particularity the books or records required; (2) that it calls for production of documents which were not in appellant's possession; (3) that compliance would be unreasonable and oppressive; (4) that an appeal from the judgment of contempt for refusing to produce the identical documents is presently pending in the Court of Appeals for the Ninth Circuit, in which appeal appellant challenges the validity of the first subpoena *on the grounds mentioned* in this motion.

On January 30, 1952, the District Court entered an order denying the motion to quash after appellant had been sworn and given testimony in support of his motion to quash. In this order the court pointed out that the Government conceded that for the purposes of the then current inquiry before the (second) Grand Jury it was only necessary that a portion of the subpoena be complied with, namely, the production of income tax returns for the calendar years of 1949 and 1950 which had been filed by appellant in the office of the Collector of In-

---

1. The certificate of the judge was prepared in conformity with the provisions of Rule 42(a) Fed. Rules of Criminal Procedure, 18 U.S.C.A., and certified that the conduct for which appellant is punished for criminal contempt was committed in his presence on December 11, 1951, during a session of the court at which time appellant appeared before him and there wilfully refused either to produce said records or in the alternative, to produce forthwith a list of names of persons for whom he had prepared and/or filed income tax returns for the calendar years 1949 and 1950. The part of the colloquy between appellant and the judge which reveals the wilful refusal of appellant is set forth in the certificate which also makes plain that the judge had "modified" the subpoena to the extent of giving appellant the option of supplying the records demanded in the subpoena or merely the list of names and dates of tax returns of these clients.

ternal Revenue for the First Collection District of California, and/or prepared by him for filing in the said Collector's office on behalf of any person other than himself.

As noted above, appellant assails the validity of the first subpoena on the grounds relied on in attacking the second subpoena. He asserts that both subpoenas are an invasion of his privacy and are therefore *similar* to an unreasonable search and seizure prohibited by the Fourth Amendment, but he couples this attack with the concession that the question of *reasonableness* is a question of fact in each case. In his order denying the motion to quash the District Judge found as a fact that production of the documentary evidence sought by the Grand Jury would not subject appellant to oppressiveness or unreasonableness on the part of the Grand Jury, citing Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614, and held that (as here) response to a lawful subpoena duces tecum was not an unlawful search and seizure.

The court further found and held that any criminal acts committed with relation to the Bureau of Internal Revenue in the First Collection District of California are proper subjects of inquiry by the Grand Jury impaneled for this District; that copies of the returns prepared by appellant might well be relevant to the inquiry then before the grand jury, particularly since appellant had already been interviewed by agents of the Bureau concerning one of the income tax returns prepared by him during the period in question. The judge concluded that grand jury inquiry into criminal activities must be given the broadest scope consistent with constitutional principles in order to make such inquiries effective in protecting public interest.

The order also set forth that appellant testified that he had prepared 25 returns for the calendar year 1949 and more than that in 1950, but that he did not know how many more; that he produced photographic evidence to show the quantity and volume of the documents that he would be required to produce in accordance with this subpoena, as he interpreted the subpoena; that he admitted that he had been interviewed concerning the return of one of the persons for whom he had prepared an income tax return during the period in question, and that in this interview the subject of the alleged back-dating of that return had been discussed. Also that appellant had specifically refused to claim the privilege against self-incrimination but contended that the subpoena was merely a fishing expedition designed to unreasonably harass himself and his clients.

The order further recited that appellant indicated by his testimony that he understood what books and records were required, and substantially identified the income tax returns which he considered to be the subject of this subpoena; that this fact, taken together with the statement of appellant that he only prepared 25 returns in 1949 and more than that in 1950, does not indicate that there was any misunderstanding on his part as to what records were required; that while the language of the subpoena calls for copies of all income tax returns during the calendar years 1949 and 1950 prepared and/or filed by petitioner on behalf of other persons than himself, in view of his testimony as to the limited number of returns prepared by him it cannot be said that the subpoena fails to designate with sufficient clarity or particularity the records required.

As thus modified and limited to returns filed in the First Collection District of California, the (second) subpoena of January 25, 1952 was approved by the judge in his order denying the motion to quash.

On February 11, 1952, the judge prepared and filed a certificate containing recitals pertinent to appellant's second appearance before the grand jury and the second contempt proceeding.[2]

Upon the second criminal contempt ap-

---

2. The certificate of the judge (executed, in conformity with Rule 42(a) Federal Rules of Criminal Procedure) recites generally that on February 1, 1952, appellant appeared as a witness before the duly empaneled Grand Jury in this District under subpoena to produce certain documents before this Grand Jury, but appellant failed to produce these documents; that on February 8, 1952, the

pellant was adjudged guilty and sentenced to a term of imprisonment for a period of six months.

### Errors Assigned

Appellant demands reversal of both judgments of conviction and relies on two alleged errors of the lower court. (1) In denying appellant's motion to set aside the judgment and order of contempt arising from the issuance of the first subpoena. (2) In denying appellant's motion to quash the second subpoena.[3]

As to both claimed errors appellant tells us that his principal argument and one common to both appeals is that both subpoenas *were invalid upon their face* because they called for the production of *all documents,* and compliance therewith would be *unreasonable;* that his "main contention" is that both subpoenas were issued for the purpose of exploring or "fishing" for evidence. This allegation of "fishing" for evidence is the basis of his claim that his constitutional rights have been invaded.

Appellant makes plain in his brief that what he is really attacking on this appeal is not "oppressiveness" of the subpoena demands but their "unreasonableness" which he characterizes as "the prime issue" before us.

■ This court takes judicial notice of the fact that prior to December, 1951, the then Grand Jury for the Northern District of California, Southern Division, was investigating certain current charges of corruption in the Bureau of Internal Revenue, First Collection District of California. In the investigation it discovered an irregularity involving back-dating of an income tax return which had been prepared and signed by appellant on behalf of a certain taxpayer. This discovery led to the demand upon appellant for the information concerning other tax returns prepared and/or filed by him for his clients during 1949 and 1950.

■ The fact that back-dating of a tax return had been linked specifically to a tax return prepared by appellant for one of his clients gave relevance to and was a circumstance justifying the demand made upon appellant by both Grand Juries. In view of the broad investigatory powers vested generally in federal grand juries it can not be said that this particular inquiry was not clearly pertinent and material in the investigation then under way.[4]

(second) Grand Jury returned a presentment to the district court which, among other matters, recited `t appellant had wilfully, deliberately and contumaciously obstructed the process of the district court by failing to produce the required records in the said proceedings before this Grand Jury.

The certificate further recites that on February 8, 1952, appellant Donnelly appeared before the judge and after hearing, was ordered by said judge to produce the records called for by the subpoena, as heretofore modified by the court, that is to say, "copies of all income tax returns for the calendar years 1949 and 1950 prepared, and/or filed by you on behalf of any person other than yourself"; that in response to said order of the judge, appellant Donnelly, "wilfully refused to produce said records before the Grand Jury in accordance with the order of the court."

3. The issues are clarified by a quotation from appellee's brief as follows:

"What This Cause Is Not About

"Most of the usual controversies involving witnesses are absent from these cases.

"No claim of self-incrimination has been made, and hence the Fifth Amendment is not involved.

"No search or seizure was undertaken.

"The subject of inquiry by the Grand Jury involved a matter clearly within their jurisdiction, corruption in the Bureau of Internal Revenue.

"Federal tax returns are documents which directly relate to the activities of the Bureau of Internal Revenue.

"The papers of an accountant are not privileged communications.

"No problem of constructive contempt is involved. The contempts here were direct disobedience to the orders of the United States District Court, certified by the judge as having been committed in his presence."

In argument here counsel for appellant agreed that this statement clearly indicates what this case "is not about."

4. For cases discussing the breadth of the investigative powers of federal grand juries, see e.g., such cases as *Frisbie v.*

Appellant complains that he was here ordered to produce "a mass of documents." But the facts of this case clearly reveal that the subpoenas were not a blanket demand for production of *all documents* in appellant's custody as was the case in Shotkin v. Nelson, Chairman, etc., 10 Cir., 146 F. 2d 402, (relied on by appellant) where such a sweeping demand for production was held to be oppressive and unreasonable. In the case at bar the judge gave appellant the option of producing *only* the names and dates of the readily identifiable 25 tax returns in his office which he had prepared for the year 1949. He bluntly spurned this option.[5] Furthermore, appellant made absolutely no showing of the number of tax returns he had prepared for the year 1950. A contention that production of copies of these 1950 returns, or in the alternative the names of the taxpayers and the dates of these returns, would have imposed an oppressive and unreasonable burden upon him, would find no valid support in the evidence.

In the absence of any showing to the contrary we cannot assume that the court would not have given appellant a reasonable time to produce the records had he so requested. But he made no such request. We regard the demand voiced in both

orders approved by the court below as well within the limits which reason and common sense would dictate under the circumstances here present. The documents demanded by the subpoenas were carefully identified and so far as the record reveals they were readily accessible to appellant. There is absent any valid reason for indicting the Grand Jury's demands as unreasonable; production of the documents would have presented a simple and very brief task. "Reasonableness" of a subpoena demand is admittedly a question of fact in each case, and on this fact issue the lower court found no merit in appellant's contention. We agree with this finding. Cf. Application of Radio Corp. of America, D.C., 13 F.R.D. 167.

As a "subsidiary" attack on the first subpoena, appellant characterizes it as *an abuse of grand jury process* because the demand therein resulted from receipt by the jury of certain "unauthorized communications" and from actions of members of the staff of the United States Attorney who were advising the jury. He supports this attack by an affidavit of his counsel which sets forth twelve so-called "items" and upon these "items" he rests his motion to set aside the first judgment of contempt.

United States, 157 U.S. 160, 163, 15 S.Ct. 586, 39 L.Ed. 657; Hale v. Henkel, 201 U.S. 43, 60, 61, 62, 63, 26 S.Ct. 370, 50 L.Ed. 652; Blair v. United States, 250 U.S. 273, 281, 283, 39 S.Ct. 468, 63 L. Ed. 979; Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500. See also comparable investigative powers possessed by the Congress. In re Chapman, 166 U.S. 661, 669, 17 S.Ct. 677, 41 L.Ed. 1154; Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692; United States v. Bryan, 339 U.S. 323, 331, 333, 70 S.Ct. 724, 94 L.Ed. 884.

For an extended comment on the power of a federal grand jury to acquire knowledge of, or to secure and/or receive information from various sources concerning possible offenses against the laws, see United States v. Smyth, United States v. Doyle, 104 F.Supp. 283 and cases cited therein.

5. Appellant offered to provide a copy of any particular tax return which the jury identified as one prepared by him but this offer was no response at all to the

demand of the subpoenas. The two Grand Juries had no way of knowing or learning the names of clients for whom appellant had prepared tax returns save by the use of their subpoena power and therefore could not possibly demand what he thus offered to produce. His offer in this regard borders on the frivolous and we regard it as a mere subterfuge to avoid giving the specific information demanded.

We also take judicial notice of the fact that an enormous number of income tax returns are annually filed in the local district office of the Internal Revenue Bureau. The Grand Juries which issued the two subpoenas were interested in the particular 1949 and 1950 tax returns prepared by appellant for clients and which had been filed in this local office. Since the names of his clients were unknown to the Grand Juries it would have been impossible for the juries to identify "returns" prepared by appellant after they became part of the vast arrary of returns in the collector's office.

They set forth generally that the referred to "communications" were received from various persons outside the jury room; that certain staff members of the United States Attorney's Office in San Francisco "erroneously instructed members of the jury as to the law concerning the powers of grand juries." They further alleged generally that certain members of this staff "improperly conducted" themselves before the jury, and that a conversation was overheard in which a staff member "admitted" that persons had "tampered" with the jury. It is to be noted that in this phase of the attack on the subpoena appellant makes no charge, nor does he present any showing whatever that these "communications" and/or the instructions or activities of staff members of the United States Attorney referred in any manner to the documents demanded from him or to his personal or business affairs, or were in any way related thereto. Nor do the matters mentioned in the "items" indicate in the slightest degree that they led to the jury demand for the production of the documents in his possession.

This argument appears to proceed upon the theory that it is our duty to hold that the first jury was completely shorn of subpoena powers because of the matters alleged in the said affidavit. Carried to its logical conclusion this argument, if sound, would require us to hold that the jury ceased to have lawful existence as an arm of the law—that it lost all authority to inquire whether or not crimes against the laws of the United States had been committed within the area of its jurisdiction where such offenses would be triable. From this, it would follow that the first subpoena was void and of no force or effect.

We find no merit in this sweeping attack on the first Grand Jury and on the validity of the subpoena issued by it. We hold that it was, and continued to be, the duty of this jury to inquire whether there was probable cause to believe that a federal offense (or offenses) had been committed by any person or persons within the aforesaid District and Division, and if so convinced to indict the offender or offenders if prosecution for the offense (or offenses) was not barred by an applicable statute of limitations. The subpoena directed to appellant was properly issued in the performance of jury duties.

It is also urged that *while* (and because) the appeal from the first contempt was pending in the appellate court, the lower court denied "due process" to appellant by proceeding to entertain contempt proceedings on the second subpoena; also, that during the pendency of the appeal he was not required to obey the second court order. The doctrine announced in Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 is relied upon in support of this contention. It is argued that in refusing to quash the second subpoena the lower court (on the urging of Government counsel) "circumvented" appellant's right of appeal from the first judgment of conviction. The second conviction is also characterized as a gross denial of due process in that it deprived appellant of his right to test the validity of the Grand Jury's "search" under the first subpoena.

This argument assumes that once appellant had been found in contempt he became immune from further process, at least until the point was reached at which all possibility of appeal was exhausted. We agree with appellee that conviction of one crime, even if being contested on appeal, is no license to commit a second offense of a similar nature. One who commits successive crimes may receive successive punishments even though the crimes are of an identical nature. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (successive sales of narcotics); Goodrich v. United States, 5 Cir., 146 F.2d 265 (successive draft evasions). Disobedience of the Court Order of February 8, 1952 was a distinct and separate crime from disobedience of the Court Order of December 11, 1951.

In United States v. Field, (and related cases) 2 Cir., 193 F.2d 92, 109, orders for two separate sentences of imprisonment were affirmed by the Court of Appeals. To the same effect see Green v. United

States, 2 Cir., 193 F.2d 111 involving two convictions for contempt for failing to produce the same records on two different occasions. Both convictions were sustained. And compare Penfield Co. v. S. E. C., 330 U.S. 585, 592, 67 S.Ct. 918, 91 L.Ed. 1117.

Finally it is said that the subpoenas were "bad in part" because appellant was called upon to "prepare" documents. We must assume that he is referring to the work of preparing the list of names and dates of tax returns or assembling of copies of the tax returns in his possession. We find no merit in this contention.

Both orders of contempt were fully justified by the facts and appellant's refusal to obey the demands of the two subpoenas (as they were modified by the lower court) clearly constituted contemptuous acts, committed in the presence of the court. The judgments in both cases were proper and are affirmed.