Application of the Presidents, Secretaries, Treasurers, and Custodians of Records of CERTAIN CHINESE FAMILY BE-NEVOLENT AND DISTRICT ASSO-CIATIONS to quash Grand Jury sub-poenas duces tecum.

Misc. No. 8016.

United States District Court
N. D. California, S. D.
March 20, 1956.

Melvin, Faulkner, Sheehan & Wiseman, Marvin E. Lewis and Sydney F. DeGoff, San Francisco, Cal., for applicants.

Lloyd H. Burke, U. S. Atty., Lynn J. Gillard, Chief Asst. U. S. Atty., James B. Schnake, Asst. U. S. Atty., San Francisco, Cal., for the Government.

OLIVER J. CARTER, District Judge.

Before the Court are the motions of twenty-four Chinese Families, Benevolent and/or District Associations and their respective officers to quash subpoenas duces tecum issued out of this Court at the request of the current Grand Jury for this District. The subpoenas * were issued on February 29, 1956, directing production of the records sought before the Grand Jury on March first. After obtaining a continuance, and on

* See appendix.

March fifth the moving parties filed their motions to quash. The motions were heard and oral and documentary evidence was received.

The motions to quash challenge each of the subpoenas upon the ground that they are unreasonable and oppressive in violation of the Fourth Amendment to the Constitution. Generally summarized the motions state that the subpoenas are unreasonable and oppressive because they are unrestricted as to time, or as to subject matter, in that the records sought are not related to any time, place or persons, that the records sought are not relevant to the inquiry being made by the Grand Jury; and that the blanket nature of the subpoenas issued to all of the organizations and family associations composed of persons of Chinese ancestry in San Francisco is an act of discrimination against all persons of Chinese ancestry in San Francisco in that they are designed to bring all such persons into disrepute.

With a few exceptions the subpoenas ask for "all lists, rolls, or other records of membership of the association during the entire period of the association's existence; all records of dues, assessments, contributions and other income of the association, and all photographs of the membership, or any portion thereof." These subpoenas were issued in this form pursuant to an investigation currently being carried on by the Grand Jury with reference to false statements in connection with applications, and use of passports, and in connection with perjury and conspiracy to defraud the United States in that connection.[1] The affidavits of the Government further show that there are now pending against the Secretary of State in the Northern District of California more than five hundred civil actions for declaratory relief,[2] and that these actions have been filed by persons who claim derivative citizenship of the United States by reason of their birth in China or Hong Kong as the offspring of American citizen fathers. It is further alleged that these actions involve more than seven hundred fifty persons who claim to be members of every Chinese family represented by associations which have been subpoenaed to produce records, and that in order to resolve the identity of these persons the State Department has conducted investigations of these cases through the American Consulate General at Hong Kong starting in December, 1955, and that at the present time investigation has been completed in the first thirteen of those civil actions, which involve twenty-two persons, and that this investigation shows that many of the claims of citizenship through blood relation with an American citizen father have been admitted to be false. The Government argues that this showing is sufficient to establish the reasonable relationship between the documents and records sought and the investigation of the Grand Jury. The moving parties have stipulated that a compliance with the subpoenas will not be unreasonable or oppressive in the physical sense, in that the volume or quantity of records sought is so excessive as to impede normal activities of the associations and organizations involved. The oral testimony shows that the quantity of the records in numbers of books or documents is not very great in any single case. The challenge, however, is to the sweeping and all-inclusive nature of the subpoenas in relation to the subject of inquiry by the Grand Jury. They do not challenge the power of the Grand Jury to conduct an investigation into the subject matter disclosed; nor do they deny that some of the records of some of the associations may be germane and relevant to the inquiry. Their challenge is to the blanket nature of the records sought both as to time and subject matter.

1. Paraphrased from reporter's transcript page 7.

2. See 8 U.S.C.A. § 1503, which superseded 8 U.S.C.A. § 903.

There can be no question but that the scope and subject matter of the Grand Jury investigation is both appropriate and necessary. The Grand Jury has the power by subpoena duces tecum to require the production of all documents and records relevant to the subject of the investigation. This proposition is too well established to require the citation of authority. However, this power must not be so exercised as to impinge upon the prohibition against unlawful searches and seizures as set forth in the Fourth Amendment to the Constitution, or in violation of the provisions of Rule 17(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. In any event, this power is subject to the supervision of the courts to see that it is not unreasonably or oppressively exercised. See: Hale v. Henkel, 201 U.S. 43, 26 S. Ct. 370, 50 L.Ed. 652; Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S. Ct. 494, 90 L.Ed. 614.

Because of the recognition of these powers by the parties it would unduly lengthen this memorandum to discuss the many cases on this subject. The real question here is not the power of the Grand Jury to investigate, but rather the alleged excessive use of that power in this case. The Government contends that all of the persons and organizations here involved have been called before the Grand Jury in the capacity of witnesses in the possession of documentary evidence necessary to the Grand Jury investigation, and that none of the persons or organizations are suspect of criminal activities which will render them subject to criminal prosecution. While gratefully accepting this statement, the moving parties take the position that the language of the subpoenas is much too broad and sweeping to accomplish the purpose sought, and has the effect of being a "dragnet" in that it is an attempted inquisition of the major portion of the Chinese population of San Francisco through its family and district associations.

The Fourth Amendment sets forth the limitation on the powers of agencies of government in clear language: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, * * *." In Rule 17(c) of the Federal Rules of Criminal Procedure the courts are given the power to prevent abuses of that limitation by agencies of government. The Rule provides in part: "* * * The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. * * *"

There are many cases[3] discussing the reasonableness of subpoenas duces tecum issued pursuant to Grand Jury inquiries and by government agencies having the power to issue subpoenas under an act of Congress. The rationale of some of

3. See: Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Consolidated Rendering Co. v. State of Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327; Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; Essgee Co. of China v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696; Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500; Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614; Consolidated Mines of California v. S. E. C., 9 Cir., 97 F.2d 704; Donnelly v. United States, 9 Cir., 201 F.2d 826; McMann v. S. E. C., 2 Cir., 87 F.2d 377, 109 A.L.R. 1445; In re Motions to Quash Subpoenas, etc., D.C., 30 F.Supp. 527; In re Grand Jury Investigation, D.C., 33 F. Supp. 367; In re United Shoe Machinery Corp., D.C., 6 F.R.D. 347; see also later ruling in same case, D.C., 7 F.R.D. 756; In re Eastman Kodak Co., D.C., 7 F.R.D. 760; Application of Radio Corp. of America, D.C., 13 F.R.D. 167; United States v. Woerth, D.C., 130 F. Supp. 930.

these cases is set forth in Oklahoma Press Pub. Co. v. Walling, supra, 327 U.S. at page 208, 66 S.Ct. at page 505, where the Supreme Court said:

"Without attempt to summarize or accurately distinguish all of the cases, the fair distillation, in so far as they apply merely to the production of corporate records and papers in response to a subpoena or order authorized by law and safeguarded by judicial sanction, seems to be that the Fifth Amendment affords no protection by virtue of the self-incrimination provision, whether for the corporation or for its officers; and the Fourth, if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable."

Wilson v. United States, 221 U.S. 361, at page 376, 31 S.Ct. 538, at page 542, 55 L.Ed. 771, states:

"But there is no unreasonable search and seizure when a writ, suitably specific and properly limited in its scope, calls for the production of documents which, as against their lawful owner to whom the writ is directed, the party procuring its issuance is entitled to have produced."

 The question is basically one of fact in which the Court is required to balance the public interest against private security. Here the organizations whose records are sought are in the main Chinese family associations, most of which have been in existence for many years, either in the form of a corporation, or an unincorporated association. The affidavits show that their dates of in-corporation, and in the case of the unincorporated associations their time of organization, go as far back as 1895, and one was incorporated as late as 1955. In the main most of the organizations came into existence prior to 1930. Since most of these organizations have been in existence for more than twenty-five years, it is contended that a subpoena which demands the production of records "during the entire period of the association's existence" is oppressive on its face. When analyzed in the light of the cases this contention has merit. See discussion of time in In re Eastman Kodak Co., D.C., 7 F.R.D. 760, 765, and In re United Shoe Machinery Corp., D.C., 7 F.R.D. 756.

Research does not disclose any subpoena which has been upheld for a period of more than twenty-seven years. However, the question of time is one which must be evaluated in the light of the circumstances of the particular case, and here the question under investigation is the identity and family relationship of individuals. It may well be that upon a proper showing the records of a particular family association may be subject to production under a subpoena duces tecum for a much longer period than twenty-seven years. However, the demand in this case is so broad and sweeping that it is unreasonable in the light of the circumstances. It is not simply that all of the records have been demanded for the entire period of each organization's existence, but all of the records have been demanded without relation to time, place or person. The fact that all of the records are demanded does not in and of itself make the subpoena unreasonable or oppressive. See Donnelly v. United States, 9 Cir., 201 F.2d 826, and Consolidated Mines of California v. S. E. C., 9 Cir., 97 F.2d 704.

Here again the word "all" has to be interpreted in the light of the circumstances of the particular case. In so far as the quantity of the records, or the interfer-

ence with. the business of the organizations involved is concerned, there would be no oppressiveness in the demand for all the records in this case. It is the demand for all of the records without regard to time or to the purpose of the inquiry which creates the problem. According to the Government, individuals or groups of individuals have made false claims for passports upon the assertion that they are blood children of American citizens, and therefore citizens of the United States, and that a number of criminal acts, such as false statements, perjury and other crimes against the United States or conspiracies to commit such crimes, have been committed. The investigation, therefore, must necessarily be related to individuals, or groups of individuals. The assertion that there are involved in the investigation persons, who claim to be members of every Chinese family represented by associations which have been subpoenaed to present records for presentation to the Grand Jury, is not a sufficient showing to overcome this deficiency. The broad demand smacks more of the fishing expedition which was condemned in Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, at page 305, 44 S.Ct. 336, at page 337, 68 L.Ed. 696, where the Court said:

> "Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire (Interstate Commerce Commission v. Brimson, 154 U.S. 447, 479, 14 S.Ct. 1125, 38 L.Ed. 1047), and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime."

Furthermore, the Court cannot overlook the fact that the same type of subpoena was served upon every Chinese family association in San Francisco, and while the result may not have been intended, it had the effect of being a mass inquisition of the family records of a substantial portion of the Chinese population of San Francisco. When considered as a whole, and viewed in the light of the circumstances, the gross effect. of the subpoenas is that they are unreasonable. This is not to say that the information sought cannot be made available to the Grand Jury. Many, or all of the records demanded may properly be the subject of Grand Jury inquiry through a subpoena duces tecum, and therefore the order quashing the subpoenas will be made without prejudice to the issuance of subpoenas which are sufficiently specific and properly related to the subject of inquiry.

While the Court has the power to modify subpoenas under Rule 17(c) of the Federal Rules of Criminal Procedure, the Court will not exercise that power in this case, because it does not have sufficient information upon which to make such modification.

The motions to quash, and each of them, are granted. Counsel for the moving parties are directed to prepare an order in conformity herewith.

### Appendix

The following is a compilation agreed upon by counsel for the moving parties and counsel for the Government listing the name of the Association, the name and title of the officer served, and the language of the charging part of the subpoena:

A. Chinese Consolidated Benevolent Association, aka Chinese Six Companies. Daniel S. Chu, Secretary. "All books and records showing the officers of the Chinese Family Associations and Chinese District Associations."

B. Chinese American Citizens Alliance, San Francisco Lodge. Henry Tom, Secretary. "All lists, rolls, or other records of membership of the Association

during the entire period of the Association's existence; all records of dues, assessments, contributions and other income of the Association; and all photographs of the membership or any portion thereof."

C. Hop Wo Benevolent Association. George Yee, English Secretary; Francis M. Yee, Treasurer; Lai Chun Wu, President and Chinese Secretary. Same as "B" above.

D. Hoy Sun Ning Yung Benevolent Association. Lee Gin, Treasurer. Same as "B" above.

E. Kong Chow Friendly Society. Burk-Him Chung, Secretary. Same as "B" above.

F. Yan Wo Benevolent Association. Leo Chin, aka Chin Sue Wai, Chinese Secretary.

G. Jung Ting Ho Hong. Thomas W. Jung, Manager-Spokesman. Same as "B" above.

H. Huie Kao Yang Tang. Paul Hing Hee, President. Same as "B" above.

I. Chew Family Association. Chew Kwock Kee, Secretary; Chew Bing Sun, Secretary; George Ngin Chew, Assistant Secretary. Same as "B" above.

J. Leong Chong How Tong, aka Leong Gar Kung Shan. Sui Pan Leung, President; Thomas F. Leong, Secretary. Same as "B" above.

K. Dong Sam Sang Tong. Dong Ah Wo, aka Wo H. Dung, aka Dung Hin Wo, Secretary-Treasurer. Same as "B" above.

L. Lim Sai Ho Tong Association. Henry Lem, President; Edward Lim, English Secretary; S. L. Lim, Vice-President. Same as "B" above.

M. Gin Sun Hall Tong. Chan You, President; Gin Chong, aka Jin Chung, Treasurer. Same as "B" above.

N. Yee Moo Kai Association. Francis M. Yee, Secretary. Same as "B" above.

O. Yep Gar Kung Saw. Yip Hong Suey, President. Same as "B" above.

P. Lew Gar Kung Saw Association. Lew Teung, Custodian of Records; Lew Pei Chi, President. Same as "B" above.

Q. Lung Kong Tin Yee Association. Jeung Jun Chang, aka Harold J. Jung, Chinese Secretary; Thomas W. Jeung, aka Jeung Quan, English Secretary; Lew Fook, Treasurer; Pei Chi Lew (Liu) President. Same as "B" above.

R. Wong Family Benevolent Association, Inc. Wong Ming Pee, aka Franklin Wong, President; Howard Wong, aka Wong Kim Chun, English Secretary; Wong Fook Yee, Chinese Secretary. Same as "B" above.

S. Chew Lun Luen Yee Association. Der Sang, President; Huey Park, President. Same as "B" above.

T. Soo Yuen Benevolent Association. Fong Wing, Custodian of Records; Earl S. Louie, President. Same as "B" above.

U. Eng Suey Sun Association. Ng Fook Hong, aka Ng Tien Yee, Treasurer and National President. Same as "B" above.

V. Lee On Dong Benevolent Association. Tung Kong Lee, President; Kenneth Kealy Lee, Treasurer; Chuck Wing Lee, Treasurer. Same as "B" above.

W. Tom Har Gung Sho Association. Tom Hong Nguey, aka Harold Tom, Secretary; Tom Pick Ying, Secretary. Same as "B" above.

X. Gee Tuck Sam Tuck. Chow Lap Sing, Secretary; George K. Jue, President; Wm. Jack Chow, English Secretary. Same as "B" above.