UNITED STATES of America

v.

STANACK SALES CO., Inc., Samuel Ackerman, Howard Ackerman, Stanley Ackerman.

Stanack Sales Co., Inc., Appellant.

UNITED STATES of America

v.

STANACK SALES CO., Inc., Samuel Ackerman, Howard Ackerman, Stanley Ackerman.

Howard Ackerman, Appellant.

UNITED STATES of America

v.

STANACK SALES CO., Inc., Samuel Ackerman, Howard Ackerman, Stanley Ackerman.

Stanley Ackerman, Appellant.

Nos. 16507–16509.

United States Court of Appeals
Third Circuit.

Argued Sept. 14, 1967.

Decided Jan. 5, 1968.

Sidney Slauson, Englewood, N. J., for appellants.

Edwin H. Stier, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., William W. Goodrich, Asst. Gen. Counsel, Walter E. Byerley, Atty., Dept. of Health, Education and Welfare, Washington, D. C., on the brief), for appellee.

Before BIGGS, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The appellants, Stanack Sales Co., Inc. (Stanack), Howard Ackerman, secretary-treasurer of Stanack and Stanley Ackerman, the brother of Howard and a salesman for Stanack, were each charged[1] and convicted by a jury on two counts[2] of violating 21 U.S.C. § 331(f) which makes it unlawful to refuse to permit a drug-factory inspection as authorized by 21 U.S.C. § 374.[3]

Stanack Sales Co. is a family corporation in the business of repackaging prescription drugs. The bases for the prosecutions and convictions here before us were certain events which occurred on November 19, and 23 in 1964. At approximately 10 A.M. on November 19, Food and Drug Inspector Bernard Scharf appeared at appellants' premises to carry out an inspection as authorized by 21 U.S.C. § 374.[4] It appears that Scharf's visit was merely routine as nothing on the record suggests that Scharf suspected appellants of any violation of the Food, Drug and Cosmetic Act. 21 U.S.C. § 301

1. Samuel Ackerman, the father of Howard and Stanley, and the President of Stanack Sales was also charged with violating the Act. However, there being insufficient evidence upon which to base a conviction of Samuel Ackerman, the trial judge dismissed the information.

2. There were originally three counts but one was dismissed with the approval of the government.

3. 21 U.S.C. § 374 is as follows:
"(a) For purposes of enforcement of this Act, officers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner, operator, or agent in charge, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials, containers, and labeling therein. In the case of any factory, warehouse, establishment, or consulting laboratory in which prescription drugs are manufactured, processed, packed, or held, the inspection shall extend to all things therein (including records, files, papers, processes, controls, and facilities) bearing on whether prescription drugs which are adulterated or misbranded within the meaning of the Act, or which may not be manufactured, introduced into interstate commerce, or sold, or offered for sale by reason of any provision of this Act, have been or are being manufactured, processed, packed, transported or held in any such place, or otherwise bearing on violation of this Act. No inspection authorized for prescription drugs by the preceding sentence shall extend to (A) financial data, (B) sales data other than shipment data, (C) pricing data, (D) personnel data (other than data as to qualifications of technical and professional personnel performing functions subject to this Act), and (E) research data (other than data, relating to new drugs and antibiotic drugs, subject to reporting and inspection under regulations lawfully issued pursuant to section 505(i) or (j) or section 507(d) or (g) of this Act, and data, relating to other drugs, which in the case of a new drug would be subject to reporting or inspection under lawful regulations issued pursuant to section 505 (j) of this Act). A separate notice shall be given for each such inspection, but a notice shall not be required for each entry made during the period covered by the inspection. Each such inspection shall be commenced and completed with reasonable promptness. * * *"

4. Inspector Scharf had attempted such an inspection on the previous day but no Ackerman being available, was forced to return on the 19th.

et seq. As required by statute, Scharf presented his credentials to Stanley Ackerman, who was the only Ackerman then on the premises, and also gave him a written notice of inspection.[5]

Stanley Ackerman permitted Scharf to enter the establishment and began the inspection at which time Howard Ackerman arrived. An examination of the drugs on the Stanack shelves caused Scharf to suspect that Stanack Company and the Ackermans were guilty of misbranding prescription drugs and brought a request from Scharf to inspect the company's records as to the receipt and distribution of the drugs.[6] Although it appears that there was some friction between the Ackermans themselves as to whether the inspection should be permitted, Howard Ackerman informed Scharf that the requested information appeared only on records which contained financial data which Scharf had no authority to inspect. Scharf then suggested that the Ackermans either cover-up the sheets containing the financial data or themselves copy for Scharf's use the shipping and receiving data. The suggestion was refused.

It is disputed whether Scharf informed the appellants that such a refusal constituted a violation of the law. Scharf was permitted to take labels from the premises, however, which he scrutinized upon returning to his office and concluded that the labels provided insufficient disclosure as provided by law.[7] On the following Monday, November 23, Inspector Scharf, accompanied this time by another Food and Drug Inspector, Symanski, returned to Stanack Sales to try again to obtain access to the receipt and distribution records and, it is asserted, to obtain samples[8] of the drugs on hand. The requests were again refused; this time on the ground that the Ackermans were too busy. These refusals of November 19 and 23 constituted the grounds for the criminal informations, convictions and appeals presently before us.

■ After the trial below had been concluded and after the appellants filed their initial brief in this court, the Supreme Court decided two cases which have substantial bearing on these proceedings. In Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Supreme Court held that a homeowner could refuse to permit a search of his premises pursuant to an administrative regulatory code unless the administrative inspector first procured a search warrant and that the homeowner could not be prosecuted for such a refusal. Frank v. State of Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 1263 (1959), was *pro tanto* overruled. On the same day the Supreme Court applied the new protection to business establish-

---

5. It appears from the record that the information required to be filled out on the notice was supplied by Inspector Scharf immediately before the inspection and not by a superior at the Food and Drug Administration prior to the inspection.

6. Section 374 was amended in 1962 extending the inspectional powers of the Food and Drug Administration in establishments in which prescription drugs are "manufactured, processed, packed, or held," to, *inter alia*, records "bearing on whether prescription drugs which are * * * misbranded * * * have been * * * packed * * * or held in any such place * * *."

7. The insufficiency consisted mainly in failing to disclose the proper address of Stanack Sales, failing to disclose the active ingredients in the particular drug and failing to give adequate information as to dosage.

8. The appellants contend that there was merely one refusal which occurred on two occasions and thus only one possible violation. The government asserts, on the other hand, that the second refusal differed from the first in that the former included refusal to allow the agents to take samples. A reading of the trial judge's charge to the jury discloses that both counts were submitted to the jury on the same theory, a refusal to permit inspection of records of receipt and distribution. See N.T. pp. 389–90, 392. In light of our disposition we need not and shall not decide whether the appellants could properly be convicted on two violations.

ments. See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). If the only issue presented in the cases before us was a refusal by the appellants [9] to allow the drug inspectors entry onto their premises, the decision, supra, case we are presented with two additional questions. First, is there a special exemption from Fourth Amendment protection as to business records? To put it simply, had Inspector Scharf merely stood outside the premises and asked to see records of distribution and receipt could the appellants have lawfully refused? Second, assuming such a refusal to be lawful, did the appellants waive their right to refuse inspection of their records by allowing Inspector Scharf to inspect their factory?

■■ The Supreme Court in See v. City of Seattle, supra, answered the first question by stating: "The [administrative] agency has the right to conduct all reasonable inspections of such documents [corporate books and records] which are contemplated by statute, but it must delimit the confines of a search by designating the needed documents in a formal subpoena. In addition, while a demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." 387 U.S. at 544–545, 87 S.Ct. at 1740. See also Essgee Co. of China v. United States, 262 U.S. 151, 155–157, 43 S.Ct. 514, 67 L.Ed. 917 (1923); Wilson v. United States, 221 U.S. 361, 376, 31 S.Ct. 538, 55 L.Ed. 771 (1911).

■ It appears from the record before us that Scharf proceeded generally under the statute, without a carefully delimited subpoena and only with a written notice of inspection filled out and served by Scharf himself.[10] We conclude that

9. Although we recognize that a corporation does not have as broad a scope of protection under the Fourth Amendment as do individuals, see United States v. Morton Salt Co., 338 U.S. 632, 651–654, 70 S.Ct. 357, 94 L.Ed. 401 (1950), it is clear from the Supreme Court's opinion in See v. City of Seattle, 387 U.S. at 544–545, 87 S.Ct. 1741 that, if the latter case controls here, under the circumstances at bar the corporate records could have been obtained only by the procurement of a search warrant or an administrative subpoena. See text of this opinion, infra. Consequently, in the case before us, the convictions of the Ackermans and the conviction of Stanack Sales Co., Inc. may and will be considered together.

10. Moreover, the written notice of inspection, instead of putting the appellants on notice that Scharf could lawfully inspect their records did not appear to authorize such an inspection. The reverse side of the notice of inspection contained the following:
Section 704(a) of the Federal Food, Drug, and Cosmetic Act [21 U.S.C. § 374(a)] is quoted below:
"For purposes of enforcement of this Act, officers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner, operator, or agent in charge, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or are held after such introduction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials, containers, and labeling therein. A separate notice shall be given for each such inspection, but a notice shall not be required for each entry made during the period covered by the inspection. Each such inspection shall be commenced and completed with reasonable promptness."
Section 11(b) of the Federal Hazardous Substances Labeling Act [15 U.S.C. § 1271 (sic)] is quoted below:
"For purposes of enforcement of this Act (sic) officers or employees duly designated by the Secretary, upon presenting appropriate credentials and a written notice to the owner, operator, or

unless the appellants waived their rights under the Fourth Amendment their convictions cannot constitutionally stand.[11] We turn our attention to the question of waiver.

It is clear that the constitutional protection against unreasonable search and seizure can be waived. Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). However, the waiver must be clear and intentional. Cipres v. United States, 343 F.2d 95, 97 (9 Cir. 1965), cert. denied, 385 U.S. 826, 87 S.Ct. 58, 17 L.Ed.2d 62 (1966). We should hesitate to find a waiver, particularly where circumstances make it unclear whether the area searched was covered by the consent. Karwicki v. United States, 55 F.2d 225 (4 Cir. 1932). The facts in Karwicki are most apposite and establish that no waiver may be found in the case at bar.[12, 13]

Accordingly, the judgments below will be reversed and the convictions vacated.

agent in charge, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which hazardous substances are manufactured, processed, packed, or held for introduction into interstate commerce or are held after such introduction, or to enter any vehicle being used to transport or hold such hazardous substances in interstate commerce; (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such factory, warehouse, establishment, or vehicle, and all pertinent equipment, finished and unfinished materials, and labeling therein; and (3) to obtain samples of such materials or packages thereof, or such labeling. A separate notice shall be given for each such inspection, but a notice shall not be required for each entry made during the period covered by the inspection. Each such inspection shall be commenced and completed with reasonable promptness."

11. We note that in the case before us, as in Camara and See supra, we are dealing with a conviction under a statute which makes it unlawful to refuse to allow entrance to administrative agents seeking to perform a regulatory search. We are not here concerned with the question of whether evidence obtained by an unconstitutional search should be excluded from criminal proceedings under Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). In the case at bar we are faced with the constitutionality of the authorizing statute itself. Of course, if the statute could be reasonably construed to authorize a constitutional result we would so construe it. However, we find no such alternative available.

12. In Karwicki, the defendant was convicted of violating the National Prohibition Act on testimony by prohibition agents as to finding intoxicating liquors in the course of a search of defendant's premises. It appeared that a "near beer" saloon was located in the front room of the premises and defendant's family lived in the rear and upstairs, separated from the saloon by a hallway. The agents entered the saloon and informed defendant that they had a complaint that he sold illegal liquor on the premises and inquired if defendant had any objection to their looking around, to which he answered, "No." The agents searched not only the saloon but also the residence in the rear, finding whiskey in the latter. The Court of Appeals reversed the conviction stating: "[W]hen officers search without warrant upon consent * * * the consent must be unequivocal and specific, particularly when the premises searched may reasonably be held not to have been covered by the consent given." 55 F.2d at 226.

13. It should also be noted that as disclosed in footnote 10, supra, the appellants were only given notice that the inspection authorized extended to "factory, warehouse * * * and all pertinent equipment, finished and unfinished material, containers and labeling therein." Certainly if the Ackermans had read the written notice of inspection handed them, the government could not here contend that an entry permitted according to the terms of the written notice of inspection constituted a waiver of any complaint to an inspection going beyond those terms. Moreover, the development of the statute authorizing inspection supports the proposition that an inspection of premises was considered more narrow than an inspection of records. See brief for appellee, p. 10.