State Real Estate Commission *v.* Roberts, Appellant.

Argued September 8, 1969.   Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*J. Leon Rabben,* for appellant.

*Morris Chernock,* Assistant Attorney General, with him *William C. Sennett,* Attorney General, for appellee.

OPINION PER CURIAM, November 12, 1969:
Order affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:

This is an appeal by a real estate broker from a six-month suspension of his license by the State Real Estate Commission.

Since 1936, appellant has been licensed under the Real Estate Brokers License Act of 1929, Act of May 1, 1929, P.L. 1216, as amended, 63 P.S. §431 et seq. He has been a realtor in the City of Philadelphia since 1944.

In June, 1965, an investigator for the Commission appeared, without prior notice, at appellant's place of business and asked to inspect appellant's escrow account. The investigator said the inspection was routine.

Appellant, on the advice of counsel, did not allow the investigator to examine his account.

Because of this refusal, a citation was issued to appellant directing him to appear before the Commission to determine whether he had violated Section 10(a) of the Act.[1] A hearing was held, at which only the investigator testified.

The Commission concluded as follows:

"Failure on the part of the [appellant] to permit an investigator for the State Real Estate Commission to examine his records and funds . . . constitutes a violation of Section 10(a) Subsection (11)(v)."

---

[1] Section 10(a) provides, in part: "(a) The commission . . . shall have the power temporarily to suspend or permanently to revoke licenses . . . when . . . it shall find the holder thereof to have been guilty. (1) Of knowingly making any substantial misrepresentation; or (2) Of knowingly making any false promise . . .; or (3) Of a continued . . . course of misrepresentation . . .; or (4) When . . . the licensee . . . has pleaded guilty [to certain crimes] . . . (5) Of any failure to account for . . . moneys belonging to others . . .; or (6) Of any misleading or untruthful advertising; or (7) Of any act . . . which demonstrates incompetency . . .; (8) Of displaying [certain signs] without an exclusive agency therefor or without the owner's consent; (9) Of failing to furnish voluntarily a copy of the agreement of sale . . .; (10) Of buying a property listed through a straw party with the intent [to make a secret profit]; (11) Of failure to comply with the following requirements: (i) All deposits . . . must be retained . . . pending consummation or termination of the transaction . . . and shall be accounted for . . . (ii) Every real estate salesman . . . shall pay over the deposit to the real estate broker. (iii) A real estate broker shall not commingle the money or other property of his principal with his own. (iv) Every real estate broker shall immediately deposit such moneys . . . belonging to others, in a separate custodial or trust fund [escrow account] . . . (v) Every real estate broker shall keep records of all funds deposited therein [escrow account] . . . All such records and funds shall be subject to inspection by the commission. . . . (12) Of failure to provide . . . copy of any sole or exclusive sales listing contract . . . (13) [False application for a license]. (14)-(17) [Discriminatory practices]."

The Commission suspended appellant's license for six months and conditioned its reinstatement upon his allowing inspection of his books and records. The Court of Common Pleas of Dauphin County denied appellant's appeal. An appeal to this Court followed.

The question presented by this appeal is whether refusal by a broker to allow an investigator of the Commission to examine his escrow account, standing alone, constitutes a violation of Section 10(a), Subsection 11(v) of the Act, sufficient to justify the suspension or revocation of a real estate license.

License suspension or revocation is an economic disaster for the licensee. It deprives him of his livelihood and diminishes him in the eyes of both the members of his profession and the community in which he works. This is particularly severe for the real estate broker who must depend upon the support of both for his continued existence. Should he ever regain his license, his image is tarnished. Thus, the licensee's future is jeopardized when the Commission invokes Section 10(a) and suspends or revokes his license.

It is my view, therefore, that the severe sanction of license suspension and revocation should not be imposed lightly. The right to suspend must be based on the clear mandate of the legislature.

The Courts of the state have repeatedly emphasized that Section 10(a) of the Act is penal in nature. See *Penna. St. R. E. Com'n v. Keller,* 401 Pa. 454, 165 A. 2d 79 (1960); *Trott v. Hild,* 190 Pa. Superior Ct. 85, 151 A. 2d 832 (1959). As such, the law compels us to construe 10(a) strictly. Statutory Construction Act, Act of May 28, 1937, P.L. 1019, art. IV, §58, 46 P.S. §558.

Section 10(a) contains seventeen pertinent subsections, describing acts which, when committed by a licensed real estate broker, may be grounds for suspension or revocation of his license. See note 1, supra.

496

Sixteen of the seventeen subsections merely describe the prohibited acts.

Subsection 11, however, not only describes the prohibited act of commingling the principal's funds with the broker's, but also provides the procedural method whereby such violation must be avoided. The broker is required to keep the funds separate by maintaining an escrow account. In order to assure that brokers are complying with this statutory requirement, the subsection provides that escrow accounts shall be subject to inspection by the commission.

It is not clear, however, whether refusal to allow such inspection is a sufficient ground for suspension and revocation of licenses. The refusal may be based on numerous unexplained reasons. Certainly, refusal alone to submit to an inspection does not prove that the broker has commingled funds, which is the violation Subsection 11 seeks to prohibit. Rather, the position of the inspection clause within Section 10(a), and Subsection 11 in particular, would seem to indicate that it was intended merely as an aid to the Commission rather than as a separate and distinct basis for suspension and revocation.

This conclusion is confirmed by another section of the Act. Section 13 grants the Commission the power to *subpoena* records. 63 P.S. §443.[2] Should a broker fail to comply with the subpoena, a court of common pleas may enforce it. The broker may explain his grievance in court and will, at least, receive a judicial determination of his grievance. At the same time, if its

[2] "(a) The commission, . . . shall have power . . . to issue subpoenas for the attendance of witnesses and the production of books and papers. . . . (b) Where in any proceeding before the commission, any witness . . . shall refuse to produce any books and papers the production of which is called for by the subpoena, . . . the production of the books and papers required shall be enforced by any court of common pleas of this Commonwealth."

motives are legitimate, the Commission will have access to the broker's records. We should not permit the Commission to short-circuit this section by the threat of license suspension or revocation.[3]

In summary, therefore, I do not accept the finding of the lower court that refusal to allow an inspection constitutes sufficient ground for revocation or suspension. In my opinion, such action must be based on proof of violations clearly enunciated by the Act. Inferences of guilt of such violations should not be drawn from incomplete evidence, as was done in this case. Rather, if the Commission suspects a failure to maintain an escrow account, it should prove such violation by utilizing the special subpoena power granted to it by the Act.[4]

---

[3] It is not likely that many brokers will refuse an investigator's initial attempt at inspection. In most instances, the investigator's motives will be legitimate. He may be acting upon complaint or in accordance with a justifiable, standard checkup procedure. Hence, should the broker refuse inspection, in most instances a court will enforce the Commission's subsequent subpoena. Refusal to allow inspection will usually result in the broker's having to attend a Commission proceeding, bring forth his records and will substantially interrupt his business.

[4] In view of my opinion in this case, I do not reach the constitutional issue whether such an investigation is constitutional in the absence of a warrant or subpoena issued by an authority for probable cause. It should be noted, however, that in *See v. Seattle*, 387 U.S. 541 (1967), the Supreme Court of the United States held that a constitutionally valid warrant procedure was prerequisite to administrative inspection of commercial premises. It drew support for its holding from the analogous administrative use of subpoenas to inspect corporate books and records. The Court said: "The [administrative] agency has the right to conduct all reasonable inspections of such documents [corporate books and records] which are contemplated by statute, but it must delimit the confines of a search by designating the needed documents in a formal subpoena. In addition, while a demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the

498

I would reverse the order of the Court of Common Pleas of Dauphin County and remand the record to that court with directions to set aside the order of the Commission, after ordering restoration of his license. This decision would not bar the Commission, however, from further investigating this case in the manner suggested by this opinion.

SPAULDING and CERCONE, JJ., join in this dissenting opinion.

subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." 387 U.S. at 544-545.

Similarly, in *United States v. Stanack Sales Co.*, 387 F. 2d 849 (3rd Cir. 1968), the Circuit Court of Appeals reviewed the conviction of two brothers, convicted of refusal to permit a Food and Drug Administration inspector to make a statutorily authorized inspection. The inspector had given the brothers notice of the inspection and indicated the inspection was routine, but had not given them a subpoena. Judge BIGGS, speaking for the Court, said: "It appears from the record before us that [the inspector] proceeded generally under the statute, without a carefully delimited subpoena and only with a written notice of inspection filled out and served by [the inspector] himself. We conclude that . . . [the brothers'] convictions cannot constitutionally stand." Id. at 852-853.