Ann McLAUGHLIN,* United States Secretary of Labor, Petitioner,

v.

KINGS ISLAND, DIVISION OF TAFT BROADCASTING COMPANY, and Occupational Safety and Health Review Commission, Respondents.

No. 87–3457.

United States Court of Appeals, Sixth Circuit.

Argued March 17, 1988.

Decided and Filed June 6, 1988.

---

* Secretary McLaughlin, William E. Brock's successor, was appointed during the pendency of this appeal and is substituted as the appellant. See Fed.R.App.P. 43(c).

George E. Salem, Sol. of Labor, Cynthia
L. Attwood, Assoc. Sol. for OSH, Joseph M.
Woodward, Appellate Litigation, Andrea C.
Casson, Asst. Counsel for Appellate Lit.,
U.S. Dept. of Labor, Washington, D.C. El-
len L. Beard (argued), for petitioner.

A. Christian Worrell, III (argued), Bruce
A. Hoffman, Kings Island, Graydon, Head
& Ritchey, Cincinnati, Ohio, Ray H. Dar-
ling, Jr., Executive Secretary, OSHRC,
Washington, D.C., for respondents.

Before MILBURN and BOGGS,
Circuit Judges, and ALDRICH, District
Judge **.

MILBURN, Circuit Judge.

Petitioner Secretary of Labor ("the Sec-
retary") seeks review of a decision and
order of the Occupational Safety and
Health Review Commission ("the Commis-
sion") finding 29 C.F.R. § 1904.7(a), prom-
ulgated by the Secretary under the Occupa-
tional Safety and Health Act ("OSHA" or
"the Act"), 29 U.S.C. §§ 651–78, to be in
violation of the Fourth Amendment's prohi-
bition against unreasonable searches and
seizures. For the reasons that follow, we
affirm.

I.

On September 1, 1982, OSHA compliance
officer Frank Carroll went to a theme park
located near Cincinnati, Ohio, operated by
Kings Island, a division of Taft Broadcast-
ing Company ("Kings Island"), to conduct
an investigation of an employee health
complaint alleging that fog used in a theat-

** Honorable Ann Aldrich, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

rical performance at the theme park irritated employees' eyes and upper respiratory systems. The Secretary concedes that there was no other reason for the inspection. Carroll requested permission to examine Kings Island's OSHA Form 200s [1] for the previous three years, and explained that he was requesting that the records be made available to him so he could review them for hygienic and environmental problems in general. Carroll did not present a search warrant or administrative subpoena at any time before, during, or subsequent to the inspection.

Carroll was informed that Kings Island would consent to an inspection of the premises and records limited solely to the scope of the employee complaint but would not produce any other records for examination without a search warrant or other legal process. On September 22, 1982, the Secretary issued an Other Than Serious Citation [2] for failing to provide the records upon request. The citation was not accompanied by a proposed penalty but directed immediate abatement by production of the records.

Kings Island timely contested the citation and the matter came before an Occupational Safety and Health Review Commission Administrative Law Judge ("ALJ"). The ALJ issued a decision granting the Secretary's motion for summary judgment and finding Kings Island in violation of the Act for failing to produce the requested records, notwithstanding that no warrant or other legal process was ever obtained requiring Kings Island to produce the records.

Kings Island then petitioned the Commission for review, and on review, the Commission reversed the ALJ's decision. The Commission held that the Secretary's regulation violates the Fourth Amendment of the United States Constitution to the extent that it purports to authorize an inspection of business records without a warrant or its equivalent, and vacated the citation.

Thereafter, the Secretary timely petitioned this court for review of the Commission's decision.

## II.

OSHA, 29 U.S.C. § 651 *et seq.*, was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). To enforce the Act's provisions, the Act provides "for appropriate reporting procedures with respect to occupational safety and health...." 29 U.S.C. § 651(b)(12).

The specific record keeping and reporting responsibilities of employers are set out in 29 U.S.C. § 657. Each employer is required to "make, keep and preserve, and make available to the Secretary ... such records regarding his activities relating to [the Act]" as the Secretary "may prescribe by regulation as necessary or appropriate for the enforcement of [the Act] or for developing information regarding the causes and prevention of occupational accidents and illnesses." 29 U.S.C. § 657(c)(1). The Act also imposes a mandatory duty on the Secretary to prescribe regulations "requiring employers to maintain accurate records of, and to make periodic reports on, work-related deaths, injuries and illnesses other than minor injuries requiring only first aid treatment and which do not involve medical treatment, loss of consciousness, restriction of work or motion, or transfer to another job." 29 U.S.C. § 657(c)(2). The Act further requires the Secretary to "compile accurate statistics on work injuries and illnesses," and specifically authorizes the Secretary to require employers to file reports "[o]n the basis of the records made and kept pursuant to section 657(c)...." 29 U.S.C. §§ 673(a) and (e).

Pursuant to the authority conferred by the Act, the Secretary has promulgated regulations on record keeping and report-

---

**1.** An OSHA Form 200 is a log and summary of all reportable occupational injuries and illnesses of the establishment.

**2.** An Other Than Serious Citation is a violation which does not carry a substantial probability of death or serious physical harm. 29 U.S.C. § 666(k).

ing of occupational injuries and illnesses. *See* 29 C.F.R. § 1904. Employers are required to "maintain in each establishment a log and summary of all recordable occupational injuries and illnesses for that establishment," using OSHA Form 200 or an equivalent. 29 C.F.R. § 1904.2. Each employer is required to "have available for inspection" a more detailed "supplementary record for each occupational injury or illness," recorded on either Form 101 or an acceptable alternative record. 29 C.F.R. § 1904.4. An employer is also required to post at his work site an annual summary of each establishment's occupational injuries and illnesses, comprised of the year's totals from OSHA Form 200s. 29 C.F.R. § 1904.5. The records must be retained in each establishment for a period of five (5) years. 29 C.F.R. § 1904.6. Finally, the regulations provide, in relevant part:

> Each employer shall provide, upon request, records provided for in §§ 1904.2, 1904.4, and 1904.5, for inspection and copying by any representative of the Secretary of Labor for the purpose of carrying out the provisions of the act....

29 C.F.R. § 1904.7(a).

With respect to the records at issue in this case, the OSHA Operations Manual *permits* access to be achieved by means of a subpoena or a warrant, *but does not require* either type of legal process. On the contrary, Chapter VI of the Manual specifically provides that "[i]f the employer fails upon request to provide records required ... for inspection and copying ... a citation for violation of 1904.7 shall normally be issued." *Occupational Safety and Health Administration Field Operations Manual* VI–17.

## III.

■ The question before this court is whether a search warrant or its equivalent is required before the nonconsensual search of an employer's occupational health and safety records. We hold that the regulations in question, insofar as they allow such a nonconsensual search, are in violation of the Fourth Amendment of the United States Constitution.

In *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the Supreme Court held that, like the search of a private home, the search of a business is presumptively unreasonable if conducted without a warrant, as a businessman's Fourth Amendment guarantees are "placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant." *Id.* at 543, 87 S.Ct. at 1739. Indeed,

> [i]t cannot be doubted that the Fourth Amendment's commands grew in large measure out of the colonists' experience with the writs of assistance and their memories of the general warrants formerly in use in England. These writs, which were issued on executive rather than judicial authority, granted sweeping power to customs officials and other agents of the King to search at large for smuggled goods.

*United States v. Chadwick*, 433 U.S. 1, 7–8, 97 S.Ct. 2476, 2481–82, 53 L.Ed.2d 538 (1977). "Against this background, it is untenable that the ban on warrantless searches was not intended to shield places of business as well as of residence." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978). However, as the Court recognized in *See*, a warrant is not always required, as an administrative subpoena, sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome, will be adequate in certain situations. *See*, 387 U.S. at 544–45, 87 S.Ct. at 1739–40.

While the owner or operator of a business has a recognized privacy interest in commercial property, that expectation of privacy "is different from, and indeed less than, a similar expectation in an individual's home." *New York v. Burger*, 107 S.Ct. 2636, 2642 (1987). In that regard, an *exception* to the warrant requirement has been recognized *for searches of pervasively or closely regulated industries. See Burger, supra* (junkyard industry); *Dono-*

*van v. Dewey,* 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (coal mining); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (firearms); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (liquor); *see also United States v. Acklen,* 690 F.2d 70 (6th Cir.1982) (pharmacies); *Marshall v. Nolichuckey Sand Co.,* 606 F.2d 693 (6th Cir.1979) (sand and gravel industry), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980).

The rationale for the pervasively regulated industry exception to the warrant requirement stems from the fact that those "industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." *Barlow's,* 436 U.S. at 313, 98 S.Ct. at 1821 (citation omitted). Since the owners or operators of such industries have "a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, have lessened application...." *Burger,* 107 S.Ct. at 2643 (citation omitted). However, as the Secretary concedes, *the pervasively regulated industry exception is limited,* and indeed the exception, as industries affected by OSHA regulation are not by definition pervasively regulated. *Barlow's,* 436 U.S. at 315, 98 S.Ct. at 1821–22 (1978) ("The owner of a business has not, by the necessary utilization of employees in his operation, thrown open the areas where employees alone are permitted to the warrantless scrutiny of Government agents."). *See J.L. Foti Constr. Co. v. Donovan,* 786 F.2d 714, 716 (6th Cir.1986) (per curiam) ("Although no search warrant or other process is explicitly required by the Act, a search warrant or its equivalent is 'constitutionally necessary' to conduct a nonconsensual OSHA inspection.").

In *Burger,* the Supreme Court has indicated that the exception to the warrant requirement is not limited solely to pervasively regulated industries, but applies wherever "the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened." *Burger,* 107 S.Ct. at 2643. *See Allinder v. Ohio,* 808 F.2d 1180, 1187 (6th Cir.1987) (In addition to closely regulated industries, a second exception to the warrant requirement exists when "a statute 'establishe[s] a predictable and guided federal regulatory presence.'" (citing *Dow Chemical Co. v. United States,* 749 F.2d 307, 311 n. 1 (6th Cir.1984), *aff'd,* 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986))), *appeal dismissed,* 107 S.Ct. 2455 (1987). If this can be shown, then "a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment." *Burger,* 107 S.Ct. at 2643. However, the Court enunciated three criteria that must be met before any such warrantless inspection or search is constitutionally acceptable:

> First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made.
>
> Second, the warrantless inspections must be "necessary to further [the] regulatory scheme."
>
> ....
>
> Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

*Burger,* 107 S.Ct. at 2644 (citations omitted).

■ As indicated above, before this court will determine whether or not a warrantless inspection is constitutionally acceptable, the government must first overcome the presumption of unreasonableness by showing that the owner has weakened or reduced privacy expectations that are significantly overshadowed by government interests in regulating the particular industry or industries. In the present case, the

Secretary argues that the threshold is met because Kings Island has no significant privacy interest in the records in question. Conceding that Kings Island's privacy expectation has not been reduced because of pervasive regulation, the Secretary argues instead that there is only a minimal expectation of privacy in records required by law to be maintained and produced.

We agree that where agencies have sought to obtain required records for legitimate investigatory purposes, courts have repeatedly upheld access on request on both periodic and nonperiodic bases. *See, e.g., California Bankers Ass'n v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). However, we find that this case is distinguishable. The search involved here was not, as the Secretary contends, a constructive search conducted pursuant to some previously issued legal process. *See Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 195, 66 S.Ct. 494, 498, 90 L.Ed. 614 (1946) (constructive search is one conducted pursuant to court order "after adequate opportunity to present objections.") It does not involve a contested search warrant, *Acklen,* 690 F.2d at 72; an administrative subpoena, *Donovan v. Lone Steer, Inc.,* 464 U.S. 408, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984); access by injunction or court order mandating that Kings Island produce the requested records, *Cooper's Express, Inc. v. ICC,* 330 F.2d 338 (1st Cir.1964); a pervasively regulated industry, *United States v. Blue Diamond Coal Co.,* 667 F.2d 510 (6th Cir.1981) (coal mining), *cert. denied,* 456 U.S. 1007 (1982); a regulatory reporting requirement, *Shultz, supra; Morton Salt, supra;* or access pursuant to any consent order or contract with the federal government which required submittal of the information. *First Alabama Bank of Montgomery v. Donovan,* 692 F.2d 714 (11th Cir.1982). Instead, this case involves an unannounced inspection accompanied by an arbitrary and discretionary demand to inspect company records not only as they relate to a specific complaint, but for hygienic and environmental problems in general.

■ Moreover, the concept of "required records" is not synonymous with the absence of a privacy interest. We agree with the recent holding of the Eleventh Circuit, in a case directly on point, that employers have a recognizable privacy interest in the records in question, even though the employer is required by law to keep them. *Brock v. Emerson Electric Co.,* 834 F.2d 994 (11th Cir.1987).[3] "[M]any employers kept records regarding injuries and illnesses prior to the enactment of OSHA. The fact that this information must now be compiled in a particular format does not serve to strip away a company's attendant privacy interest in that information." *Id.* at 996.

Even in a pervasively regulated industry such as coal mining, records required to be maintained and made available to federal inspectors pursuant to the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 801 *et seq.,* are not "of interest or importance only to the government [because] [i]t is not uncommon for records required by statute to serve multiple purposes." *Blue Diamond Coal,* 667 F.2d at 518. Such records "are not public property." *Id.* at 519. *See C.A.B. v. United Airlines, Inc.,* 542 F.2d 394 (7th Cir.1976) (resort to compulsory legal process required in order for Civil Aeronautics Board to gain access to records required to be maintained by carrier); *United States v. Stanack Sales Co.,* 387 F.2d 849 (3d Cir.1968) (conviction for failure to permit an inspection of records under Food, Drug and Cosmetic Act overturned because inspector lacked formal subpoena); *Mid–Fla Coin Exchange, Inc. v. Griffin,* 529 F.Supp. 1006 (M.D.Fla.1981) (law enforcement officers preliminarily enjoined from enforcing state statute permitting warrantless access to required records

---

**3.** We have noted the recent holding of the Fourth Circuit in *McLaughlin v. A.B. Chance Co.,* 842 F.2d 724 (4th Cir.1988), and decline to follow it. In this connection, we note that the Fourth Circuit makes no mention of the Supreme Court's holding in *New York v. Burger,* — U.S. —, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), which we find controlling in this case.

996

of dealers in second-hand precious metals). In the present case, the Commission found:

> We find that injury records, like the mine ventilation records at issue in *Blue Diamond*, are not of interest only to the government. Such records might well be compiled for an employer's own business reasons. Employers seeking to preserve the lives and health of valued employees, to raise the morale of a workforce, or to secure lower insurance rates might consider such records to be the most reliable means of learning what processes, practices, or machinery have been the cause of workplace injuries and illnesses. They might find that injury records reveal patterns and afford broad perspectives in determining, for example, what machinery needs improvement or what work processes require modification.

> . . . .

> Injury records accordingly predate the OSH Act and its recordkeeping regulations. Such records contain much information that, before the passage of the Act and those regulations, employers could reasonably have expected would remain private. Certainly before the adoption of OSHA's regulations, the federal government could not have seized these records without some sort of legal process. *See Barlow's*, 436 U.S. at 324 n. 22, 98 S.Ct. at 1826 n. 22. Injury records maintained in accordance with OSHA regulations contain important details about an employer's operations and manufacturing processes that even conscientious executives might not freely reveal to outsiders.

J.A. at 20, 22–23 (footnotes omitted). We conclude that even though the records in question are required by law to be kept, this does not remove any privacy expectation that the employer may have in the information.

As noted earlier, it it also important that OSHA compliance officers are given the option of gaining access to the records through either a warrant or subpoena, or through citation upon an employer's refusal to allow inspection. The Secretary concedes that the Fourth Amendment limits her authority to obtain documents through subpoena or warrant. *E.g., See*, 387 U.S. at 544–45, 87 S.Ct. at 1739–40. To allow the government to circumvent those limitations by choosing not to use a warrant or subpoena is untenable. *See Emerson*, 834 F.2d at 997 n. 3. The Fourth Amendment requires that the employer have some notice and opportunity to be heard to challenge the reasonableness of the agency request. While an "agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute, ... *it must delimit the confines of a search by designating the needed documents in a formal subpoena.*" *See*, 387 U.S. at 544, 87 S.Ct. at 1740 (emphasis added). *See United States v. Consolidation Coal Co.*, 560 F.2d 214, 217 (6th Cir. 1977), *vacated and remanded*, 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978), *judgment reinstated*, 579 F.2d 1011 (6th Cir.1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34 (1979) (Even if federal law requires records to be maintained and specifically authorizes on-premises inspection, the inspection must be pursuant to a warrant or its equivalent).

Assuming, *arguendo*, that the Secretary was able to establish a reduced expectation of privacy, the Secretary has still failed to meet the three criteria enunciated by the Supreme Court in *Burger*. Specifically, the Secretary has failed to establish that "the warrantless inspections [are] 'necessary to further the regulatory scheme,'" and has failed to establish that the regulations "'provid[e] a constitutionally adequate substitute for a warrant.'" *Burger*, 107 S.Ct. at 2644 (quoting *Dewey*, 452 U.S. at 600, 603, 101 S.Ct. at 2540).

The Secretary concedes that it could, if necessary, obtain a warrant or subpoena every time it needed access to OSHA logs. The Secretary does not argue that a warrantless inspection of the records is necessary for detection and deterrence of violations of the Act, and is not concerned that employers will alter or destroy the records upon being given notice and a hearing. *See* 29 C.F.R. § 1904.9 (provides for a fine or imprisonment upon falsifying or failing

to keep the records or reports required by the Act). Instead, the secretary contends that requiring a warrant or subpoena would be overly burdensome both for the agency and for the federal courts who would have to rule on routine applications and motions to enforce or quash. However, absent a showing that warrantless inspections are necessary for reasonable enforcement of the Act, the Fourth Amendment will not tolerate such warrantless intrusion. That compliance with the Fourth Amendment is burdensome on government officials is immaterial.

Finally, the Secretary has also failed to establish that the regulations provide an adequate substitute for a warrant. The Secretary contends that the OSHA enforcement scheme grants employers a procedural safeguard and that no monetary penalty may be imposed for failure to provide the required records until the reasonableness of the citation is affirmed by the Commission. Therefore, the Secretary argues that the discretion of the compliance officer is adequately limited, and the privacy interest of the employer is reasonably protected.

However, as the United States Supreme Court noted in *Barlow's*, a provision authorizing warrantless administrative inspections "devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field...." *Barlow's*, 436 U.S. at 323, 98 S.Ct. at 1826. Furthermore, the administrative proceedings which the Secretary characterizes as procedural safeguards are simply proceedings in which an employer must defend itself against a citation alleging violation of the Act and regulations thereunder. The procedures are not geared to evaluating the reasonableness of the inspector's decisions prior to his acting on them. At a minimum, we hold that an evaluation should take place prior to any search or citation issued for refusal of a search. An employer may not be threatened with a penalty for asserting his Fourth Amendment rights.[4] *Emerson*, 834 F.2d at 997.

4. We note that the Secretary's argument here is inconsistent with her claim that a warrantless inspection is justified because it is less burdensome. We fail to see how it would be less burdensome for an employer to challenge the warrant at the citation hearing than it would be for him to challenge the warrant at a hearing prior to the search.

IV.

Accordingly, insofar as 29 C.F.R. § 1904.7(a) authorizes the Secretary to obtain access to business records without either a warrant or an administrative subpoena, we hold that it is inconsistent with the Fourth Amendment of the United States Constitution. Therefore, the decision of the Commission is AFFIRMED.